RUDOLPH ANDERSON, Appellant, *v.*
DORIS ANDERSON, Respondent.

No. 20367

August 28, 1991                                        816 P.2d 463

*Greenman, Goldberg, Raby & Martinez,* Las Vegas, for Appellant.

*Mark Jenkin,* Las Vegas, for Respondent.

## OPINION

By the Court, STEFFEN, J.:

Prior to the termination of their thirty-two-year marriage, Rudolph and Doris Anderson, appellant and respondent, respectively, agreed to divide their joint bank accounts. The parties signed the requisite withdrawal slips, and, at the direction of Rudolph, deposited the money into two separate accounts. The unequal division thus created resulted in the deposit of $110,000.00 to Doris's account and $54,000.00 to Rudolph's account.

Rudolph contends that the trial court erred in finding that the unequal distribution of the joint funds constituted a "final division of these funds." He argues that the court should have disallowed the division in favor of a more equitable distribution.[1] We disagree.

---

[1] The concurring opinion would have this court decide an issue of law that was not formally raised as an issue on appeal. The only issue framed by appellant for review by this court was "[d]id the Court make an equitable

The district court's decision is supported in the record by substantial evidence. In particular, the property division was just and equitable in that Rudolph receives twice the amount of Social Security as Doris, and Rudolph was awarded an automobile valued at twice that of Doris's vehicle. Moreover, Rudolph moved in with his girlfriend where he was able to live without the payment of rent. *See* McNabney v. McNabney, 105 Nev. 652, 782 P.2d 1291 (1989).

Even if we were to accept, arguendo, Rudolph's bare contention that NRS 123.220(1) requires a written agreement to transmute community property into separate property, and that the district court facilitated the transmutation of community funds into separate funds without such a written agreement, the record still supports the result reached by the lower court. There is ample record evidence to sustain the distribution of the funds in the joint accounts under the doctrine of estoppel. *See* Schreiber v. Schreiber, 99 Nev. 453, 663 P.2d 1189 (1983). Indeed, Rudolph admitted in court that he temporarily misled Doris into believing that the division of the community funds was to be permanent. Each of the elements of estoppel addressed in Lubritz v. Circus Circus Hotels, 101 Nev. 109, 693 P.2d 1261 (1985), and Southern Nevada Memorial Hosp. v. State Dep't of Human Resources, 101 Nev. 387, 705 P.2d 139 (1985), are substantially satisfied on this record.

Given our disposition of this matter, it is unnecessary to address the other issues raised by Rudolph. The judgment entered by the district court is affirmed.

MOWBRAY, C. J., and YOUNG, J., concur.

---

distribution of the community property of the parties?" Although appellant did contend, *briefly,* that NRS 123.220 requires a written agreement between husband and wife to alter the character of community property, he did so without citation of authority other than the referenced statute and otherwise with so little emphasis that respondent did not even address the subject in her answering brief. Nevertheless, the author of the concurring opinion suggests that this court's opinions in Schreiber v. Schreiber, 99 Nev. 453, 663 P.2d 1189 (1983), and Verheyden v. Verheyden, 104 Nev. 342, 757 P.2d 1328 (1988), contained erroneous, gratuitous footnotes on the subject. Apparently concluding that his prior endorsements of *Schreiber* and *Verheyden* were ill advised, the author of the concurring opinion now believes we should finally pronounce judgment that will "clarify past confusion." Based upon the record before us, we choose to forego addressing a point not raised as a formal issue on appeal, not briefed at all by respondent, not meaningfully briefed by appellant, and not at all essential to our decision on appeal. Moreover, in the context of such poor illumination, we are unwilling to so readily conclude that this court's expressions in *Schreiber* and *Verheyden* are in need of "clarification."

SPRINGER, J., with whom ROSE, J., agrees, concurring in the judgment:

The issue in this case is whether NRS 123.220 requires a writing in order for married parties to "transmute" community property to separate property. Although we have intimated (*see Schreiber* and *Verheyden,* below) that a writing is required, it is not; and we should take this opportunity to say so.

In past cases we have enforced oral transmutation of community property on collateral grounds—estoppel and part performance. *See* Schreiber v. Schreiber, 99 Nev. 453, 663 P.2d 1189 (1983). In *Schreiber,* the parties "orally agreed to divide the community property and go their own ways. Pursuant to this agreement, the family residence was sold and the proceeds divided equally. Respondent received most of the family assets of a masonry contracting business owned by the community." *Id.* at 545, 663 P.2d at 1189-90. In *Schreiber,* we held that no written evidence was needed under the circumstances of that case because the parties had already performed the agreement. *See also* Verheyden v. Verheyden, 104 Nev. 342, 346 n.4, 757 P.2d 1328, 1331 n.4 (1988) (holding same). We did not hold in *Schreiber,* nor has this court held at any time, that NRS 123.220 requires that community property division or "transmutation" requires a writing. Nevertheless, in both *Schreiber* and *Verheyden,* we did state (unnecessarily) that such a writing was required by NRS 123.220(1).[1] For this reason, our case law is in need of clarification.

NRS 123.220, "Community Property Defined," merely, as put in its headnote, *defines* community property; it does not relate to division of community property or to the so-called "transmutation" of community property into some other species of property. NRS 123.220 *defines* community property as all property that parties acquire after marriage except property that they have agreed in writing should not be community property; it goes no further than this. In other words, once property becomes community property by virtue of NRS 123.220 (by being acquired after marriage by a husband and wife who have not agreed in writing that the property should not be community property), the method of future transfer is not restricted by statute.

Rather than deciding this case on the somewhat amorphous, collateral ground of estoppel, I would clarify past confusion and

---

[1] In *Schreiber,* misleading dicta appears in the form of a footnote giving apparent approval to a party's incorrect concession that "NRS 123.220 requires that there be an agreement in writing between spouses in order to transmute community property into separate property." In *Verheyden,* we repeated this mistake with a footnote that contained language similar to the footnote in *Schreiber.* In each case, the footnotes were purely gratuitous; the issue had neither been briefed or presented to the court for decision.

hold directly that the oral agreement was enforceable because no writing or other formality is required by our statute, NRS 123.220(1). Deciding in the manner that I propose would be consistent with the way in which the subject has been treated by the California courts, which refused to impose judicially any kind of formalities on agreements dividing or transmuting community property. Woods v. Security First National Bank, 299 P.2d 657 (Cal. 1956). This ruling was invalidated by a recent enactment of the California legislature, however, and now transmutation agreements are, by statute, effective only if made in writing. Cal. Civ. Code § 5110.730 (West Supp. 1990).[2] The important principle to be gleaned from the California experience is that the task of creating requirements that depart from prevailing common-law norms is one better left to the legislature. If this state is to follow California's lead in treating the subject legislatively, it is likely to do so only after this court has ruled squarely on the subject.

---

[2]"A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest is adversely affected."