THE STATE OF NEVADA, EX REL., DEPARTMENT OF TRANSPORTATION, APPELLANT, v. LEWIS HILL, INDIVIDUALLY; ORA LEE HILL, INDIVIDUALLY; AND EMANUEL HILL, INDIVIDUALLY, RESPONDENTS.

No. 27762

September 1, 1998

963 P.2d 480

*Frankie Sue Del Papa,* Attorney General, and *Roger D. Comstock,* Senior Deputy Attorney General, Carson City, for Appellant.

*Bradley, Drendel & Jeanney,* Reno, for Respondents.

## OPINION

By the Court, ROSE, J.:

The winter storms of 1992-93 extensively damaged Interstate 80 (I-80) west of Reno. The State Department of Transportation (the State or NDOT) applied a pothole filler to a stretch of the highway near the Gold Ranch Casino in Verdi. On March 13, 1993, that stretch of road had become slick and hazardous when rain mixed with the road filler. That evening, respondents Lewis Hill (Lewis) and Ora Lee Hill (Ora Lee) were driving from San Francisco to Reno with their spouses. Ora Lee is married to Lewis' older brother, Emanuel Hill (Emanuel), and Lewis was married to Earnestine Hill (Earnestine).

As a result of NDOT's admitted negligence, the Hills' vehicle hit a slick spot of road, spun out of control, and flipped over sev-

eral times. Lewis, Ora Lee, and Emanuel received relatively minor injuries; however, Earnestine, the only occupant who had not been wearing a seat belt, was ejected from the vehicle and sustained fatal injuries. The wrongful death claims of Lewis and of Lewis and Earnestine's son were settled prior to trial. At trial Lewis, Ora Lee, and Emanuel brought claims for personal injuries. Additionally, Lewis and Ora Lee brought claims for negligent infliction of emotional distress (NIED). Emanuel did not claim emotional distress because he had no recollection of the accident.

The jury awarded Lewis a total of $50,244.05 on his claims ($15,244.05 for personal injuries and $35,000.00 for emotional distress). Ora Lee received $11,795.50 for her personal injuries along with $10,000.00 for emotional distress. Emanuel received $33,024.41 for his personal injuries. The State appeals the verdicts pertaining to Lewis and Ora Lee. It asserts that pursuant to statute, Lewis could not collect more than a total of $50,000.00 from the State, and asks this court to reduce his award accordingly. The State further asserts that Ora Lee did not satisfy the prima facie requirements of a claim for NIED, and asks this court to vacate her $10,000.00 award.

## FACTS

This case arose out of a March 13, 1993 single-car rollover, which occurred in the eastbound lanes of I-80 near the Gold Ranch Casino in Verdi. On March 13, 1993, Lewis was driving his 1989 Blazer from San Francisco to Reno for a weekend of recreation with his wife, Earnestine, his brother, Emanuel, and his brother's wife, Ora Lee. All of the occupants, except for Earnestine, were wearing seat belts.

The two couples had each been married approximately thirty-five years. They had all known each other as school children in Alabama; the couples had moved to California and had lived within twenty miles of each other for the thirty years preceding the accident. Emanuel and Ora Lee testified that Lewis and Earnestine were their closest friends, and that the couples had travelled together numerous times throughout the years, often sharing hotel rooms. Ora Lee had known Earnestine for over thirty-five years. The three survivors testified that Earnestine and Ora Lee were exceedingly close, seeing each other at least twice a week and talking on the telephone several times each week. Ora Lee stated that she and Earnestine were more like sisters than sisters-in-law, and that she was closer to Earnestine than to her two blood sisters.

Sometime around noon on March 13, 1993, the two couples left San Francisco on their way to the Sands Hotel/Casino in

Reno. Several minutes before 6:00 p.m. they passed the Gold Ranch Casino outside of Verdi, traveling east. Near the Gold Ranch overpass, Lewis' vehicle hit a slick spot on I-80 where NDOT had recently repaired a patch of road. The vehicle went into a spin and rolled over, ultimately coming to rest on its passenger side in the median.

Once the vehicle stopped, Ora Lee unfastened her seat belt and crawled out of the back window. Lewis used a bystander's knife, cut himself out of his seat belt and also crawled out of the vehicle. Emanuel's right hand and forearm were trapped under the vehicle's passenger-side door. Earnestine was not in the vehicle, and Lewis and Ora Lee called out to her. They saw Earnestine lying to the south of the vehicle and attempted to go to her aid; however, they were restrained by several on-lookers who told Lewis and Ora Lee that they "didn't want to see" what had happened to Earnestine.

Ora Lee then noticed that her sixty-nine year old husband, Emanuel, was still in the car; she called out to him several times, and when he finally nodded his head, Ora Lee exclaimed, "Oh, thank God, he's alive." Shortly thereafter (at approximately 6:25 p.m.), Lewis and Ora Lee were taken by ambulance to Washoe Medical Center. Earnestine was pronounced dead at the scene at 6:42 p.m. Ora Lee and Lewis testified that they knew that Earnestine was seriously injured when they left the accident scene; however, they did not find out about her death until approximately two hours after they had arrived at Washoe Medical Center.

At the time Ora Lee learned of Earnestine's death, she was also informed that Emanuel had survived, but had sustained injuries to his right arm and hand—a dislocated, broken wrist and several broken fingers. Ora Lee, Lewis, and Emanuel were released late that night. The next day, a witness to the accident drove Lewis, Ora Lee, and Emanuel to their homes in the San Francisco area. Emanuel testified that he did not remember being driven home and could not recollect what had transpired between the time of the accident and his trip back to the bay area.

Emanuel's injuries required subsequent surgical treatment, and Ora Lee testified at trial that he still did not have full use of his right arm. Notwithstanding, Emanuel was able to return to his job as a school crossing guard the following school year. By the time of trial, Lewis and Ora Lee had made nearly complete physical recoveries; however, testimony indicated that Ora Lee and Lewis were still quite upset by the accident and Earnestine's death. Emanuel testified that Ora Lee cried frequently, had little appetite, and had lost a lot of weight since the accident.

At trial, NDOT conceded liability and the amount of damages to be paid was the only issue. The jury awarded Lewis a total of

$50,244.05 on his claims ($15,244.05 for personal injuries and $35,000.00 for emotional distress), Ora Lee received $11,795.50 for her personal injuries along with $10,000.00 for emotional distress, and Emanuel received $33,024.41 for his personal injuries.

At trial, it appeared that Ora Lee sought emotional distress damages for witnessing injury to both Earnestine and Emanuel.[1] The verdict did not apportion Ora Lee's emotional distress damages between the effects of seeing Earnestine and Emanuel injured. The State claims that, as a matter of law, Ora Lee could not recover for emotional distress because she was not "closely related" to Earnestine. It further contends that no damages should have been awarded to Ora Lee based upon emotional distress incurred in seeing Emanuel trapped beneath the vehicle because he was not seriously injured. The State also appeals the jury's award to Lewis to the extent it exceeded $50,000.00 (i.e., $244.05), claiming that the verdict contravened the language and policy of NRS 41.035, which limits recovery from the State to $50,000.00 for each cause of action.

## DISCUSSION

*The State preserved the issues pertaining to the viability of Ora Lee's NIED claim*

Ora Lee argues that the State "failed to preserve for review its assertion that Ora Lee was not a sufficiently 'close relative'" to Earnestine, and "its contention that Emanuel's injuries were insufficiently severe to give rise to" a NIED claim. We conclude that Ora Lee's contentions are without merit. The record shows that the State argued at trial that Ora Lee was not "closely related" to Earnestine, and that Emanuel did not incur the "serious injuries" which are required as a condition precedent to a plaintiff being able to recover damages for NIED. Accordingly, we will review the merits of the subsequent issues on appeal.

*Ora Lee was entitled to the NIED award for witnessing the death of Earnestine*

At trial, the district court instructed the jury that Earnestine and Ora Lee were closely related as a matter of law. In State v. Eaton,

---

[1] During closing arguments, Ora Lee's counsel stated:

> There's a much more serious component in Ora Lee's damages, and that goes to this component of emotional distress *for having witnessed the death of Earnestine Hill, having witnessed Emanuel Hill trapped underneath the car. . . .*
>
> I would ask that on Ora Lee's behalf, *for having witnessed her friend of 40 years, her passing, an event like that for $75,000.*

(Emphasis added.)

101 Nev. 705, 718, 710 P.2d 1370, 1379 (1985), where a mother sought damages for emotional distress after witnessing the death of her child, this court first "recognize[d] a cause of action for serious emotional distress which results in physical symptoms *caused by apprehending the death or serious injury of a loved one* due to the negligence of the defendant." (Emphasis added.) In *Eaton,* this court expressly adopted the test for foreseeability of emotional harm as expressed in Dillon v. Legg, 441 P.2d 912 (Cal. 1968).

This court quoted *Dillon's* articulation of factors for trial courts to consider in determining the foreseeability of emotional injury to a particular plaintiff:

> "(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) *Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.*"

*Eaton,* 101 Nev. at 716, 710 P.2d at 1377-78 (quoting *Dillon,* 441 P.2d at 916) (emphasis added).

In *Dillon,* the court explained its rationale for abolishing the old "zone of danger" rule and expanding bystander liability to include those who witness severe injury to a victim with whom they share a close relationship:

> The case thus illustrates *the fallacy of the rule that would deny recovery in the one situation and grant it in the other* . . . . [W]e can hardly justify relief to the sister for trauma which she suffered upon apprehension of the child's death and yet deny it to the mother merely because of a happenstance that the sister was some few yards closer to the accident. The instant case exposes *the hopeless artificiality* of the zone-of-danger rule.

State v. Eaton, 101 Nev. 705, 713, 710 P.2d 1370, 1375 (1985) (quoting *Dillon,* 441 P.2d at 915) (emphasis added).

Ora Lee and Earnestine were more than in-laws, they were best and dearest of friends for almost forty years; Ora Lee was closer to Earnestine than to her own sisters. We believe that to preclude Ora Lee from recovery for the shock of witnessing the death of such a loved one for want of a legal or blood relationship would be the height of "hopeless artificiality." For example, a rule that would deny recovery to a plaintiff who "merely

because of happenstance" witnesses the death or injury to his fiancée in an accident which occurs on the way to the wedding ceremony, yet permits recovery if an accident occurs on the couple's way to the wedding reception, is fallacious.

Although there is some extrajurisdictional case law rigidly mandating the presence of a legal or blood relationship as a prerequisite for recovery on a NIED claim, substantial dissenting jurisprudence co-exists. Other jurisdictions have specifically held that *the absence of a legal or blood relationship between a bystander and a victim should not foreclose recovery* under a *Dillon* analysis. *See* Leong v. Takasaki, 520 P.2d 758 (Haw. 1974). As aptly stated by the Hawaii Supreme Court, the "factors formulated in Dillon . . . should be utilized to determine the genuineness and degree of mental distress, rather than to bar recovery." Campbell v. Animal Quarantine Station, 632 P.2d 1066, 1069 (Haw. 1981).

Therefore, we conclude that whether a plaintiff can recover for NIED after witnessing injury to another based on the plaintiff's relationship to the victim is generally a question of fact. The factfinder should have the opportunity to assess the nature and quality of the relationship between the plaintiff and the victim whose injury or death was witnessed by the plaintiff. *See* Paugh v. Hanks, 451 N.E.2d 759, 767 (Ohio 1983) (" 'We decline to draw an absolute boundary around the class of persons whose peril may stimulate the mental distress. This usually will be a jury question bearing on the reasonable reaction to the event . . . . ' ' ") (quoting Hunsley v. Giard, 553 P.2d 1096 (Wash. 1976)). However, as noted by Justice Maupin in his concurrence, there will be cases where the district court can determine that, as a matter of law, the relationship is not sufficiently close to merit presentation to a jury. We encourage the district courts to scrutinize the closeness of the relationship when questioned in these cases prior to trial.

Although we have just announced that whether a witness is closely related to the victim is generally a question of fact, where undisputed evidence exists concerning the nature of the relationship, the issue may be resolved as a matter of law. *Cf.* Rockwell v. Sun Harbor Budget Suites, 112 Nev. 1217, 1225, 925 P.2d 1175, 1180 (1996). The evidence showed that Ora Lee and Earnestine had been best friends for nearly four decades. They spoke almost on a daily basis and saw each other several times a week. These two women travelled together and were closer than blood sisters.

In this case, the facts clearly supported the judge's determination that Ora Lee and Earnestine were closely related such that Ora Lee's emotional distress was great in witnessing Earnestine's violent death.[2] We affirm the award of Ora Lee's emotional distress damages on this ground.[3]

*That portion of Lewis' judgment exceeding $50,000.00 should be sustained because a claim for NIED is a separate cause of action*

NRS 41.035 provides, in pertinent part:

> 1. An award for damages in *an action sounding in tort* brought under NRS 41.031 [waiving the State's sovereign immunity] or against a present or former officer or employee of the state or any political subdivision, immune contractor or state legislator arising out of an act or omission within the scope of his public duties or employment *may not exceed the sum of $50,000,* exclusive of interest computed from the date of judgment, *to or for the benefit of any claimant.* An award may not include any amount as exemplary or punitive damages.

(Emphasis added.)

---

[2] Although the facts in this case supported a finding of "close relationship" as a matter of law, we note that where, based on the facts, it is equally clear that the plaintiff and the victim were not closely related ("i.e., recent acquaintances, etc."), such a finding would also be appropriate as a matter of law.

[3] The submission to the jury of the emotional distress claim for witnessing the injury to Emanuel along with the death of Ernestine was error because the injuries to Emanuel were not major or life threatening. However, unlike the appellants in Stickler v. Quilici, 98 Nev. 595, 596, 655 P.2d 527, 527-28 (1982), the State did not request an instruction or verdict form requiring the jury to distinguish between damages awarded for witnessing the death of Ernestine, and those awarded for witnessing injury to Emanuel. Although the State made several objections to the verdict form, none addressed this lack of apportionment; therefore, any such objection is waived on appeal. *See* Building Trades v. Thompson, 68 Nev. 384, 409, 234 P.2d 581, 593 (1951).

In contrast to *Stickler,* in the instant case it is not "impossible to determine" the basis for the jury's award. *Stickler,* 98 Nev. at 597, 655 P.2d at 528. The jury was instructed that damages could not be awarded unless Ora Lee was "aware that [the accident] caused death or *serious* injury" to a loved one (emphasis added), and we presume that the jury followed its directive. Furthermore, Ora Lee sustained her burden of proof in a manner supporting the award of emotional distress damages. *Compare Stickler,* 98 Nev. at 597, 655 P.2d at 528. Her emotional distress argument at trial focused primar-ily on her witnessing Ernestine's death, and the amount awarded was reasonable on that basis alone. Under these singular circumstances we do not feel obligated to reverse Ora Lee's emotional distress damages simply because there was some evidence presented with regard to her witnessing Emanuel's injuries.

This court has recognized that where a wife joins her action for personal injuries with her action for the wrongful death of her husband, she has two separate actions for the purposes of NRS 41.035, and is entitled to separate recovery up to the statutory cap on *each* action. State v. Webster, 88 Nev. 690, 695, 504 P.2d 1316, 1320 (1972). "Although joined in one complaint, an action for wrongful death and an action for personal injuries suffered by the plaintiff in the same accident are separate, distinct and independent. They rest on different facts, and may be separately maintained." *Id.* (citations omitted). The *Webster* court reasoned that "the term 'action' [as used in NRS 41.035] is the wrong done, not the measure of compensation or the character of the relief sought[.]" *Id.* at 696, 504 P.2d at 1320.

A claim for NIED rests on facts separate, distinct and independent from those germane to a claim for personal injuries.[4] To have a cause of action for NIED, Lewis had to show that he apprehended the serious injury to his loved one. However, to prove his cause of action for personal injuries, Lewis had to demonstrate to the fact-finder the extent of his bodily harm (medical expenses, missed work, etc.). Thus, each claim could be separately maintained, and each claim was subject to its own $50,000.00 statutory cap. To the extent that any language in State v. Eaton, 101 Nev. 705, 710 P.2d 1370 (1985), is inconsistent with this holding, *Eaton* is overruled.

## CONCLUSION

Ora Lee's $10,000.00 emotional distress verdict was supported by her witnessing the death of Earnestine. We, therefore, affirm the award of emotional distress damages to Ora Lee. We further conclude that for purposes of NRS 41.035, NIED is a separate and distinct cause of action; therefore, we affirm Lewis' judgment below.

SHEARING, J., concurs.

---

[4]Therefore, contrary to JUSTICE YOUNG's assertion, this rule would not "allow[ ] a plaintiff to maintain separate actions for a broken arm and a twisted knee received in one accident." Because the elements of a personal injury action and those for NIED are distinctly different, a plaintiff need not have a personal injury claim to bring a claim for NIED; likewise, he need not have suffered emotional distress to bring a claim for personal injuries.

There were two separate and distinct wrongs done to Lewis. The emotional distress for which he seeks compensation did not arise out of his personal injuries but from witnessing the death of his wife. To adopt JUSTICE YOUNG's reasoning would be to ignore the holding of State v. Webster, 88 Nev. 690, 504 P.2d 1316 (1972). This we decline to do.

MAUPIN, J., concurring:

I agree that Ora Lee was eligible to assert an emotional distress claim under State v. Eaton, 101 Nev. 705, 710 P.2d 1370 (1985). As Earnestine's sister-in-law, Ora Lee was "closely related" to Earnestine, as a matter of law, for the purpose of standing to assert such a claim.

I note, however, that our adoption of *Dillon* in *Eaton* has inevitably required re-examination of the standing issues raised in these matters. I write separately because I would prefer, while this doctrine is still in its developmental stage, to consider these claims, on appeal, on a case-by-case basis. Specifically, I would not adopt a rigid rule restricting standing, nor, as suggested by ROSE, J., would I adopt a general rule that standing is a jury question to be resolved, based upon the subjective nature of the relationship between a bystander and the physically injured party. Instead, I recognize that some individuals, as a matter of law, will not have standing to assert an *Eaton* emotional distress claim while others, as a matter of law, will have standing. In a few close cases, the trial court may not be able to determine the standing question as a matter of law. Only in these close cases should the trial court submit the standing issue to the jury.

I also note that, where the issue of bystander recovery is submitted to the jury, whether in close cases or cases where standing has been determined as a matter of law, the trial court must separately instruct that the closeness of the relationship is an issue of fact with respect to damages.

Turning to the dissenting portion of the separate opinion of YOUNG, J., my colleague raises a most interesting issue concerning the application of separate liability "caps" with regard to Lewis Hill's claims for his own personal injuries and his additional NIED damages sustained for witnessing the death of his wife. *See* NRS 41.035 (defining the limits of liability of government entities under Nevada's qualified waiver of sovereign immunity). The majority observes that the dissent ignores the holding of State v. Webster, 88 Nev. 690, 504 P.2d 1316 (1972). *Webster* implicated multiple "caps" in the context of separate claims arising from a single incident by a single plaintiff for her own personal injuries and for wrongful death damages arising from fatal injuries to a relative which included damages for grief and sorrow. The dissent notes that Lewis has already received a settlement for his separate wrongful death claim, and that the imposition of a separate "cap" would create a duplicate recovery, arguing that both NIED and wrongful death recoveries are based upon infliction of emotional distress. Thus, the dissent reasons that the majority has expanded the qualified waiver of sovereign immunity beyond that contemplated by the legislature.

Certainly, in addition to his "wrongful death" settlement, Lewis has now received separate jury awards for his own personal injuries and for his emotional distress arising from *apprehending* the fatal injuries suffered by his wife. As this court has stated, an NIED claim constitutes an independent and separate cause of action. Thus, if *Webster* is taken to its logical conclusion, the majority correctly implicates three separate liability "caps."

We have not departed or retreated from *Webster* in the twenty-six years since it was decided. If the dissent is correct, we would arguably have to overrule *Webster* because it was wrongly decided. Simply stated, the *Webster* scenario, at best, only offers distinctions without any substantive differences.[1] At this point, we should defer to the legislature on the question of whether we misconstrued the meaning of "causes of action" in 1972, and whether we continue to do so today.

SPRINGER, C. J., concurring in part and dissenting in part:

I concur in the court's affirming the judgment of the trial court; but, I strongly disagree with the plurality's suggestion that "the absence of a legal or blood relationship between a bystander and a victim should not foreclose recovery" in an emotional distress case. If such became a rule of law, it would permit *anyone* to prosecute an emotional distress claim merely by showing that (as put in the plurality opinion) "he apprehended [a] serious injury to his loved one."

Whatever the term "loved one" might encompass, extending this narrow tort to any plaintiff who might claim to "love" some one or another not only creates an undefinable and unmanageable class of plaintiffs, it goes far beyond the generally recognized bounds of this tort. If the plurality's proposition were ever adopted by a majority of this court, it would be in direct contradiction of our rule in State v. Eaton, 101 Nev. 705, 716, 710 P.2d 1370, 1377-78 (quoting Dillon v. Legg, 441 P.2d 912, 916 (Cal. 1969)), that "the plaintiff and the victim [must be] *closely related.*" (Emphasis added.) "Best friends" and "loved ones" are not related.

The term "related," as used in *Eaton,* has the traditional meaning of being related by blood or marriage. I would agree with the trial court that the relationship of the sisters-in-law comes within the definition of "closely related," and is not a "distant relationship," as these terms are employed in *Eaton.* As I have always

---

[1] While Lewis did settle his wrongful death claim, the injury components, although similar, are different. *See* NRS 41.085(4). Grief and sorrow under NRS 41.085(4) may be distinguished from damages arising from "apprehending" a loved one's catastrophic injuries. Thus, because claims for direct injuries, wrongful death and NIED damages are separate "actions" as defined in *Webster,* separate caps are implicated.

understood the word "related," it necessarily applies only to one's "relations," which is to say, persons with whom one is "related by blood or marriage." At common law and traditionally, one could be related either by consanguinity or by affinity. Consanguinity denotes relationship by blood. Affinity denotes relationship by marriage. In dissenting, I do not propose a rule that would identify the line between those mentioned in *Dillon* who are "closely related" and those who bear a "distant relationship;" but I am prepared to accept sisters-in-law as a close enough relationship to permit recovery in this case under *Dillon,* and that is the reason that I concur in the result reached by the majority.

*Dillon* and *Eaton* speak of close and distant relationships. I take this to mean that persons who are not related[1] cannot be the subject of this tort action. Thus, good friends, admired celebrities and dearly-loved pets are excluded.

It would be very disturbing if the court were ever to adopt the rule suggested by the plurality, namely, that "the absence of a legal or blood relationship between a bystander and a victim would not foreclose recovery," it would vastly expand the scope of liability under this tort. Under such a rule, anyone could claim to have a "close relationship" (as defined by the plurality) with one's boss, a close acquaintance or an admired rock star—just about anybody—and recover money for the distress suffered when witnessing injury to whomever one is so "closely related." Juries will now be asked to inspect "the nature and quality of the relationship between the plaintiff and the victim," whatever in the world that expression might mean, and award damages, I guess, based on the "nature and quality of the relationship." I consider this rule to be a very ill-advised one and, therefore, dissent.

YOUNG, J., concurring in part and dissenting in part:

I agree with the opinion of CHIEF JUSTICE SPRINGER with respect to the issue of what relationship is required to support a claim for NIED. However, I write separately because I am troubled by the majority's willingness to brush aside the specific provisions of NRS 41.035 on the grounds that Lewis' claim for emotional distress was an action separate from his claim for physical injury. This decision is unsupported by case law and represents ill-advised public policy.

It is important to note at the outset that Lewis' wrongful death

---

[1] I remember reading in one of Norman Cousin's books that, mathematically, every person on earth is related to all others by no less than the sixteenth degree—sixteenth cousins. Thus, although we are all "related," I believe that in defining "closely related" in the context of this tort, I see the sister-in-law, brother-in-law relationship as being at the outer limits of the "close" relationship that is required for tort liability.

claim was settled prior to trial. To the extent his damage award at trial related to injuries caused by Earnestine's death, that award was based on a negligent infliction of emotional distress theory.

The majority relies on our decision in State v. Webster, 88 Nev. 690, 504 P.2d 1316 (1972). However, *Webster* supports a conclusion opposite from the one the majority makes. In *Webster*, the plaintiff brought an action for the wrongful death of her husband and an action for her own personal injuries. We held that, vis-à-vis NRS 41.035, "the term 'action' is the wrong done and not the measure of compensation or the character of the relief sought" and, therefore, the plaintiff's wrongful death claim was an action separate from her personal injury claim.

In my view, emotional distress and physical injury are not separate wrongs; they are merely separate species of personal injury, a single class of wrong. While the plaintiff claiming physical injury seeks recovery for damage done to his or her body, the plaintiff claiming emotional distress requests compensation for injuries to his or her psyche. However, the majority, relying on certain language from *Webster*, states that "[a] claim for negligent infliction of emotional distress rests on facts separate, distinct, and independent from those germane to a claim for personal injuries," and, therefore, the two injuries give rise to separate actions. I believe that the majority here uses isolated language from *Webster* to subvert the primary holding of that case; the majority seems to assume that *Webster* holds that injuries based on "different facts" are necessarily "separate wrongs."

The facts which a plaintiff must show at trial in order to prove *any* two injuries are, to some extent, necessarily separate and distinct from each other. Thus, the majority's interpretation of *Webster* would allow a plaintiff to maintain separate actions for every individual injury. This is analogous to allowing a plaintiff to maintain separate actions for a broken arm and a twisted knee received in one accident. The majority seeks to distinguish this admittedly absurd example from the present case by stating that "a plaintiff need not have a personal injury claim to bring an action for negligent infliction of emotional distress; likewise, he need not have suffered emotional distress to bring a claim for personal injuries." However, this is no answer. A plaintiff need not have suffered a broken arm to bring an action for a knee injury, and the reverse is also true.

Moreover, even different damage theories based upon a single injury require proof of separate and distinct facts. A personal injury plaintiff may recover damages for past and future pain and suffering, for loss of consortium, for loss of earnings before trial, for future loss of earnings, for the cost of medical services incurred, and for future medical expenses, just to name a few

damage theories. In order to recover under each of these theories, the plaintiff must prove facts not required in order to prove the others. The majority's decision today seems to imply that each of these damage theories gives rise to a separate cause of action.

I must emphasize that contrary to the majority's assertion, my position is not that *Webster* was decided incorrectly. Rather, I contend that the majority reads *Webster* so broadly as to utterly eviscerate the provisions of NRS 41.035. The legislature has determined that the State's liability in negligence should be limited to $50,000.00 per action. Even though Lewis' recovery exceeded this limit by only $244.05, I fear that the majority's decision today may have the effect of multiplying this figure several times. Such a radical change in the liability which public entities must be prepared to absorb is not ours to effect; it is the legislature's. I believe that the majority's fragmentation of injury claims into separate actions subverts the plain language of NRS 41.035. Therefore, I respectfully dissent.