34

ANTONIO BADILLO, THOMAS FRANKLIN, JACK M. LIPSMAN, DEBRA K. OTTING, ROBERT TASSIELLO, REGINA BASILIO, ROBERT MURPHY, JAMES A. DILULLO, DENNIS HONEYWELL, VITO DIENNO, MARTIN N. HALNAN, V. ARLENE CHRISTENSEN, WILLIAM JOSEPH, KIMBERLY BOSLEY, NORMAN SELCER, ANNE SELCER, CLARA VIRGA, LORETTA BROWN, BRADLEY DOUD, AND EARL WITTIG, APPELLANTS, *v.* AMERICAN BRANDS, INC., AMERICAN TOBACCO COMPANY, B.A.T. INDUSTRIES, P.L.C., BATUS HOLDINGS, INC., BATUS TOBACCO SERVICES, INC., BGLS, INC., BRITISH AMERICAN TOBACCO COMPANY, LTD., BROWN & WILLIAMSON TOBACCO CORPORATION, BROOKE GROUP LTD., DOSAL TOBACCO CORPORATION, LIGGETT GROUP, INC., LIGGETT & MYERS, INC., LOEWS CORPORATION, LORILLARD, INC., LORILLARD TOBACCO COMPANY, NATIONAL ASSOCIATION OF TOBACCO DISTRIBUTORS, PHILIP MORRIS, INC., PHILIP MORRIS COMPANIES, INC., PHILIP MORRIS INTERNATIONAL, INC., PHILIP MORRIS MARKETING SA, PHILIP MORRIS PRODUCTS, INC., R.J. REYNOLDS TOBACCO COMPANY, RJR NABISCO, INC., RJR NABISCO HOLDINGS CORPORATION, THE COUNCIL FOR TOBACCO RESEARCH-U.S.A., INC., THE TOBACCO INSTITUTE, INC., TOBACCO INSTITUTE, INC., TOBACCO MERCHANTS ASSOCIATION OF THE UNITED STATES, UNITED STATES TOBACCO COMPANY, AND UST, INC., RESPONDENTS.

No. 34300

January 30, 2001                                16 P.3d 435

*Beckley Singleton Jemison Cobeaga & List* and *Daniel F. Polsenberg* and *Beau Sterling,* Las Vegas, for Appellants.

*Edwards & Winterton, Chtd.,* and *Nicholas A. Boylan,* Las Vegas; *Gerard & Associates,* Las Vegas; *Humphrey, Farrington & McClain, P.C.,* and *John F. Edgar* and *Gregory Leyh,* Independence, Missouri, for Appellants Selcer, Virga, Brown, Doud, Wittig, DiEnno and Halnan.

*LoBello & LoBello,* Las Vegas; *Blumenthal, Ostroff & Markham,* La Jolla, California; *Chavez & Gertler LLP,* Mill Valley, California, for Appellants Christensen, Joseph and Bosley.

*Ross Law Chartered,* Carson City; *Peter L. Flangas,* Las Vegas; *Murray Law Firm* and *Perry M. Nicosia,* New Orleans, Louisiana; *The Godfrey Firm* and *Patrick M. Files,* New Orleans, Louisiana, for Appellants Badillo, Franklin, Lipsman, Otting, Tassiello, Basilio, Murphy, Dilullo and Honeywell.

*Backus & Associates, Ltd.,* Las Vegas; *Simpson Thatcher & Bartlett,* New York, New York, for Respondent B.A.T. Industries, P.L.C.

*Burton Bartlett & Glogovac,* Reno, for Respondents Lorillard Tobacco Company and Lorillard, Inc.

*Dickerson, Dickerson, Consul & Pocker* and *Douglass A. Mitchell,* Las Vegas; *Debevoise & Plimpton,* New York, New York; *Bryan Cave,* Overland Park, Kansas, and Phoenix, Arizona, for Respondent The Council for Tobacco Research-U.S.A., Inc.

*Guild Russell Gallagher & Fuller,* Reno; *Kasowitz, Benson, Torres & Friedman, LLP,* New York, New York, for Respondents Brooke Group Ltd., Liggett Group, Inc., Liggett & Myers, Inc., and BGLS, Inc.

*Hunterton & Associates,* Las Vegas; *Skadden, Arps, Slate, Meagher & Flom LLP,* New York, New York, for Respondents United States Tobacco Company and UST, Inc.

*Hutchison & Steffen,* Las Vegas; *Chadbourne & Parke LLP,* Los Angeles, California, for Respondent British American Tobacco Company, Ltd.

*Jones Vargas* and *Gary R. Goodheart,* Las Vegas; *Covington & Burling,* Washington, D.C., for Respondents The Tobacco Institute, Inc., and Tobacco Merchants Association of the United States.

*Kummer Kaempfer Bonner & Renshaw,* Las Vegas, for Respondents Loews Corporation, Lorillard Tobacco Company and Lorillard, Inc.

*Lionel Sawyer & Collins* and *Dennis L. Kennedy* and *David N. Frederick,* Las Vegas; *Davis Polk & Wardwell,* New York, New York, for Respondents R.J. Reynolds Tobacco Company, RJR Nabisco, Inc., RJR Nabisco Holdings Corporation, Brown & Williamson Tobacco Corporation, American Tobacco Company, American Brands, Inc., BATUS Holdings, Inc., and BATUS Tobacco Services, Inc.

*Schreck Morris,* Las Vegas; *Shook Hardy & Bacon L.L.P.,* Kansas City, Missouri; *Heller Ehrman White & McAuliffe LLP* and *Anna S. McLean,* San Francisco, California, for Respondents Philip Morris, Inc., and Philip Morris Companies, Inc.

*Martinez & Gutierrez,* Miami, Florida, for Respondent Dosal Tobacco Corporation.

*Sedgwick, Detert, Moran & Arnold,* San Francisco, California, for Respondents Brown & Williamson Tobacco Corporation, BATUS Holdings, Inc., BATUS Tobacco Services, Inc., and American Tobacco Company.

*Womble Carlyle Sandridge & Rice,* Winston-Salem, North Carolina; *Jones Day Reavis & Pogue,* Los Angeles, California; Cleveland, Ohio; and Dallas, Texas, for Respondent R.J. Reynolds Tobacco Company.

*Chester H. Adams,* City Attorney, Sparks, for Amicus Curiae City of Sparks.

*Lefebvre, Barron & Vivone, Chtd.,* and *Andrew Craner,* Las Vegas, for Amici Curiae American Gaming Association, Nevada Association of Employers, Nevada Resort Association, Nevada Self-Insurers Association, Reno-Sparks Chamber of Commerce, and Retail Association of America.

*McDonald Carano Wilson McCune Bergin Frankovich & Hicks LLP,* Reno, for Amicus Curiae Associated General Contractors.

*McMullen Strategic Group,* Reno, for Amicus Curiae Las Vegas Chamber of Commerce.

*Perry & Spann,* Reno; *Crowell & Moring LLP* and *Victor E. Schwartz, Mark A. Behrens* and *Emma K. Burton,* Washington,

D.C., for Amici Curiae Product Liability Advisory Council, Inc., and American Tort Reform Association.

*William E. Peterson,* Senior Vice President and General Counsel, for Amicus Curiae Sierra Pacific Resources.

*Piscevich & Fenner*, Reno, for Amici Curiae Builder's Association of Northern Nevada, DR Partners, Economic Development Authority of Western Nevada, Nevada Development Authority, Nevada Farm Bureau, Nevada Franchised Auto Dealers Association, Nevada Manufacturer's Association, Nevada Mining Association, Nevada Petroleum Marketers & Convenience Store Association, Terrible Herbst, Inc., and U-Haul Company of Nevada.

## OPINION

*Per Curiam:*

This case comes to the court in the form of certified questions from the United States District Court for the District of Nevada. The federal district court requested that we issue an opinion stating Nevada law with respect to the following two questions: (1) whether Nevada common law recognizes a medical monitoring

cause of action or remedy where medical testing facilitates the detection of diseases resulting from exposure to a toxic substance; and (2) if Nevada common law recognizes a medical monitoring cause of action or remedy, what elements must a plaintiff prove to be entitled to medical monitoring. We conclude that Nevada common law does not recognize a medical monitoring cause of action but the remedy of medical monitoring may be available. The elements necessary for a medical monitoring remedy may depend upon the cause of action for which the medical monitoring is a remedy. The parties have not meaningfully briefed the issue and therefore we decline to decide it.

## FACTS

Appellants are plaintiffs in four potential classes who brought class action suits against seven parent corporations, six current or former cigarette manufacturers, nine affiliated corporations, one trade association, and one research-funding organization, seeking, among other things, the establishment of a court-supervised medical monitoring program to aid in the early diagnosis and treatment of tobacco-related illnesses. In one of the four cases, the named plaintiff and proposed class members are smokers. In the other three cases, the plaintiffs and proposed class members are casino employees (both nonsmokers and former smokers) who claim exposure to environmental or secondhand tobacco smoke at work. The federal district court consolidated the casino employee cases under Badillo.

All four actions are at an early stage. Discovery has been confined to class certification issues with motions for class certification pending in the three casino employee cases. Appellants assert various claims against the defendant tobacco companies, including strict liability, negligence, fraud, and misrepresentation. Appellants seek medical monitoring to detect whether they have any diseases as a result of their exposure to cigarette smoke. The federal district court determined that class certification of appellants for medical monitoring hinges on whether medical monitoring is a viable cause of action or a viable remedy under Nevada law.

Noting no controlling precedent in Nevada law for the viability of medical monitoring as a claim or a remedy, the federal district court on its own motion requested that this court answer the following two questions of law pursuant to NRAP 5: (1) whether Nevada common law recognizes a medical monitoring cause of action or remedy where medical testing facilitates the detection of diseases resulting from exposure to a toxic substance; and (2) if Nevada common law recognizes a medical monitoring cause of

action or remedy, what elements must a plaintiff prove to be entitled to medical monitoring

## DISCUSSION

The tort system attempts to accomplish the goals of compensation, allocation of cost, and deterrence. *See* Diane P. Wood, *Commentary on the Futures Problem, by Geoffrey C. Hazard, Jr.,* 148 U. Pa. L. Rev. 1933, 1933 (2000). Medical monitoring is a novel, non-traditional tort and remedy. *See Thompson v. American Tobacco Co.,* 189 F.R.D. 544, 552 (D. Minn. 1999). Medical monitoring has evolved, in part, because the traditional common law tort system, which was inherited from post-feudal England and was developed to address conflicts raised by simple, straightforward traumatic injuries, is ill-designed to deal with the field of mass torts and latent, rather than immediate, injuries. *See* Amy B. Blumenberg, *Medical Monitoring Funds: The Periodic Payment of Future Medical Surveillance Expenses in Toxic Exposure Litigation,* 43 Hastings L.J. 661, 667-75 (1992); *see also* Wood, *supra*, at 1933-34.

"A claim for medical monitoring seeks to recover the anticipated costs of long-term diagnostic testing necessary to detect latent diseases that may develop as a result of tortious exposure to toxic substances." *Bower v. Westinghouse Elec. Corp.,* 522 S.E.2d 424, 429 (W. Va. 1999). The Third Circuit Court of Appeals aptly explained that the tort was created "in an effort to accommodate a society with an increasing awareness of the danger and potential injury caused by the widespread use of toxic substances." *In re Paoli Railroad Yard PCB Litig.,* 916 F.2d 829, 850 (3d Cir. 1990).

Since the landmark decision *Askey v. Occidental Chemical Corp.,* 477 N.Y.S.2d 242, 247 (1984), in which a New York appeals court acknowledged medical monitoring could be a recoverable damage, appellate courts in at least ten other states have recognized claims for medical monitoring.[1] In addition, federal courts have interpreted state law in at least seven additional states

---

[1] *See, e.g., Petito v. A.H. Robins Co.,* 750 So. 2d 103 (Fla. Dist. Ct. App. 2000); *Bower v. Westinghouse Elec. Corp.,* 522 S.E.2d 424 (W. Va. 1999); *Bourgeois v. A.P. Green Indus., Inc.,* 716 So. 2d 355 (La. 1998); *Redland Soccer Club, Inc. v. Dep't of the Army,* 696 A.2d 137 (Pa. 1997); *Potter v. Firestone Tire & Rubber Co.,* 863 P.2d 795 (Cal. 1993); *Hansen v. Mountain Fuel Supply Co.,* 858 P.2d 970 (Utah 1993); *Meyerhoff v. Turner Constr. Co.,* 534 N.W.2d 204 (Mich. Ct. App. 1995); *Burns v. Jaquays Mining Corp.,* 752 P.2d 28 (Ariz. Ct. App. 1987); *Ayers v. Township of Jackson,* 525 A.2d 287 (N.J. 1987); *see also Elam v. Alcolac, Inc.,* 765 S.W.2d 42 (Mo. Ct. App. 1988) (dictum), *cert. denied,* 493 U.S. 817 (1989).

and the District of Columbia as permitting claims for medical monitoring.[2] A Maryland Circuit Court recently concluded that a cause of action for medical monitoring exists in Maryland, but the Maryland Court of Appeals did not reach the issue because it dismissed the case on other grounds. *See Philip Morris v. Angeletti,* 752 A.2d 200, 249-51 (Md. 2000).

Badillo urges this court to recognize medical monitoring as a cause of action or, in the alternative, as a remedy. Badillo argues that recognizing medical monitoring would be consistent with past policies of this court to construe Nevada's common law of torts in furtherance of justice and public policy. Badillo contends that medical monitoring advances several sound public policy concerns, including fostering access to early medical testing for those exposed to hazardous substances, mitigating the costs of serious future illnesses, preventing the inequitable allocation of medical intervention costs, deterring future public exposure to hazardous substances, and promoting elemental justice. Furthermore, Badillo contends that this court has the power to create a common law cause of action. Finally, Badillo argues that Nevada should join the overwhelming majority of jurisdictions that recognize medical monitoring and alleges that every court that has considered medical monitoring since *Askey*, including a majority of federal circuits, has adopted it.

Respondents argue that medical monitoring is contrary to Nevada common law of torts because to recover future damages requires present physical impact, injury, or illness. To permit recovery otherwise, respondents contend, would be too speculative and would result in unpredictable liability and arbitrary outcomes.

Moreover, respondents contend there are compelling public policy arguments against recognizing a medical monitoring cause of action or remedy for exposure to toxic substances. First, respondents argue that medical monitoring would trigger a flood of litigation because modern society lives in a "sea of toxins." Virtually everyone, respondents assert, might be a potential plaintiff. Second, respondents argue that granting medical monitoring claims to large numbers of asymptomatic plaintiffs, who may

---

[2]*See, e.g., Carey v. Kerr-McGee Chem. Corp.,* 999 F. Supp. 1109 (N.D. Ill. 1998) (applying Illinois law); *Witherspoon v. Philip Morris, Inc.,* 964 F. Supp. 455 (D.D.C. 1997) (applying District of Columbia law); *Burton v. R.J. Reynolds Tobacco Co.,* 884 F. Supp. 1515 (D. Kan. 1995) (applying Kansas law); *Day v. NLO,* 851 F. Supp. 869 (S.D. Ohio 1994) (applying Ohio law); *Bocook v. Ashland Oil, Inc.,* 819 F. Supp. 530 (S.D. W. Va. 1993) (applying Kentucky law); *Cook v. Rockwell Int'l Corp.,* 755 F. Supp. 1468 (D. Colo. 1991) (applying Colorado law); *Ball v. Joy Technologies, Inc.,* 958 F.2d 36 (4th Cir. 1991) (applying West Virginia and Virginia law); *Stead v. F.E. Myers Co.,* 785 F. Supp. 56 (D. Vt. 1990) (applying Vermont law).

never become ill, will divert and possibly even deny limited resources to plaintiffs with meritorious claims of serious illness. Third, respondents argue that being awarded a medical monitoring claim will preclude plaintiffs from filing a claim for damages if they later develop physical injuries. Finally, respondents argue that because a decision to recognize medical monitoring for asymptomatic persons requires a careful balancing of complex, diverse, and competing social interests, this decision would best be left to the Legislature.

As a preliminary matter, we note Badillo's trend analysis is somewhat overstated. Although a growing number of appellate courts have recognized medical monitoring (seventeen states plus the District of Columbia), this is far from an "overwhelming majority of jurisdictions" as Badillo claims. Nor do we agree, as Badillo further asserts, that every court and a majority of federal circuits that have considered medical monitoring since *Askey* have adopted it. *See, e.g., Trimble v. Asarco, Inc.,* 232 F.3d 946, 963 (8th Cir. 2000) (applying Nebraska common law); *Wood v. Wyeth-Ayerst Lab. Div.,* No. 1999-CA-001717-MR, 2000 WL 1610658, at *3 (Ky. Ct. App. Oct. 27, 2000) (opinion not final stating that although a medical monitoring remedy is recognized, no medical monitoring cause of action exists in Kentucky). Even if all of Badillo's claims were true, they would not present a rational basis for this court's compliance. *Cf. Hinegardner v. Marcor Resorts,* 108 Nev. 1091, 1095, 844 P.2d 800, 803 (1992).

Courts have recognized medical monitoring more often as a remedy[3] than as a cause of action.[4] When recognized as a remedy, medical monitoring is usually tied to a cause of action in trespass, nuisance, strict liability, or negligence. *See* Blumenberg, *supra*, at 671-72. Most commonly it is tied to a cause of action in negligence. *See id.* at 672.

In advocating that we recognize medical monitoring as a viable remedy, Badillo did not identify an underlying cause of action anywhere in the briefs or during oral argument, even when specifically questioned on this topic. We cannot recognize a remedy absent an underlying cause of action. *See Tomiyasu v. Golden,* 81 Nev. 140, 156, 400 P.2d 415, 424 (1965) (Gabrielli, D.J., dissenting).

---

[3]*See, e.g., Bower,* 522 S.E.2d 424; *Bourgeois,* 716 So. 2d 355; *Witherspoon,* 964 F. Supp. 455; *Burton,* 884 F. Supp. 1515; *Potter,* 863 P.2d 795; *Hansen,* 858 P.2d 970; *Bocook,* 819 F. Supp. 530.

[4]*See, e.g., Petito,* 750 So. 2d 103; *Redland Soccer Club, Inc.,* 696 A.2d 137; *Meyerhoff,* 534 N.W.2d 204; *Cook,* 755 F. Supp. 1468.

In the tobacco litigation context, we note that claims for medical monitoring relief have been tied to causes of action in torts and contracts, including fraud, failure to warn, misrepresentation, strict liability, deceptive trade practices, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, conspiracy, intentional infliction of emotional distress, intentional exposure to a hazardous substance, and violation of consumer pro-tection statutes. *See, e.g., Angeletti,* 752 A.2d 200; *Thompson,* 189 F.R.D. 544; *Chamberlain v. American Tobacco Co.,* 70 F. Supp. 2d 788 (N.D. Ohio 1999); *Emig v. American Tobacco Co.,* 184 F.R.D. 379 (D. Kan. 1998); *Ruiz v. American Tobacco Co.,* 180 F.R.D. 194 (D.P.R. 1998); *Smith v. Brown & Williamson Tobacco Corp.,* 174 F.R.D. 90 (W.D. Mo. 1997); *Witherspoon v. Philip Morris, Inc.,* 964 F. Supp. 455 (D.D.C. 1997); *Arch v. American Tobacco Co.,* 175 F.R.D. 469 (E.D. Pa. 1997); *Castano v. American Tobacco Co.,* 160 F.R.D. 544 (E.D. La. 1995), *rev'd,* 84 F.3d 734 (5th Cir. 1996); *Burton v. R.J. Reynolds Tobacco Co.,* 884 F. Supp. 1515 (D. Kan. 1995). Without input from the parties, we decline to consider this overwhelming array of causes of action to which the remedy of medical monitoring could attach. Moreover, we need not consider an issue that has not been fully raised by appellants or meaningfully briefed by either party. *See Anderson v. Anderson,* 107 Nev. 570, 571-72 n.1, 816 P.2d 463, 465 n.1 (1991).

In the alternative, Badillo argues that we should recognize medical monitoring as a common law cause of action. We decline to do so.

Altering common law rights, creating new causes of action, and providing new remedies for wrongs is generally a legislative, not a judicial, function. *See National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 457-58 (1974). This court possesses the power to create a common law cause of action. *See Rupert v. Stienne,* 90 Nev. 397, 399-404, 528 P.2d 1013, 1014-17 (1974); *see also State v. Eaton,* 101 Nev. 705, 711, 718, 710 P.2d 1370, 1374, 1379 (1985), *overruled on other grounds by State, Dep't of Transp. v. Hill,* 114 Nev. 810, 963 P.2d 480 (1998). However, we construe such power narrowly and exercise it cautiously. *See Rupert,* 90 Nev. at 404, 528 P.2d at 1017.

In the instances in which we have created a new common law cause of action, the facts have been more clear-cut and the issues better defined by other jurisdictions than in the case before us. *See Rupert,* 90 Nev. 397, 528 P.2d 1013 (creating a cause of action in

tort for personal injury from a motor vehicle accident for one spouse against another by abrogating the doctrine of spousal immunity); *see also Eaton,* 101 Nev. 705, 710 P.2d 1370 (creating a cause of action for emotional distress caused by apprehending the death or serious injury of a loved one due to another's negligence); *cf. Greco v. United States,* 111 Nev. 405, 409, 893 P.2d 345, 347 (1995) (declining to recognize a wrongful life cause of action because of the difficulty of the issues).

The case before us involves a class action that includes former smokers and nonsmokers who claim harm from exposure to environmental or secondhand tobacco smoke. We acknowledge considerable scientific evidence links tobacco use with several serious diseases and adverse health outcomes, such as lung, oral, laryngeal, esophageal, bladder, kidney, pancreatic, stomach, and cervical cancers, chronic obstructive pulmonary disease, coronary heart disease, stroke, intrauterine growth retardation, low-birthweight babies, and unsuccessful pregnancies. *See* U.S. Dept. of Health and Human Services, Reducing the Health Consequences of Smoking: 25 Years of Progress, A Report of the Surgeon General, 5, 97-101 (1989). We are also sympathetic to those who are burdened with the ravages of tobacco-related illnesses and to those who fear their exposure to environmental tobacco smoke, particularly in their workplace, may one day lead to ill-health. However, we are unpersuaded on the facts of this case to recognize a cause of action or remedy for medical monitoring for exposure to hazardous substances.

Exposure to environmental tobacco smoke raises many complex issues of legal causality and proof, such as the length and intensity of exposure necessary to create a significant increased risk or harm. *Cf. Angeletti,* 752 A.2d at 237 (citations omitted). In addition, causality and proof are complicated by potential mitigating factors, such as individual medical history and other co-existing adverse health behaviors. *Id.* at 238. The defendants' contribution to harm is also not clear-cut. Defendant manufacturers made hundreds of different products containing different ingredients. *See Barnes v. American Tobacco Co.,* 161 F.3d 127, 135 (3d Cir. 1998). A toxic exposure that is discrete and more ascertainable would be less problematic.

Finally, we note that the elements of medical monitoring as a cause of action are not uniform from one jurisdiction to another. *See, e.g., Bower,* 522 S.E.2d at 432-33; *Bourgeois v. A.P. Green Indus., Inc.,* 716 So. 2d 355, 360-61 (La. 1998); *Redland Soccer Club, Inc. v. Dep't of the Army,* 696 A.2d 137, 145-46 (Pa. 1997); *Hansen v. Mountain Fuel Supply Co.,* 858 P.2d 970, 979 (Utah 1993); *Ayers v. Township of Jackson,* 525 A.2d 287, 312 (N.J. 1987). Nor is there agreement whether present physical

injury is required for a medical monitoring claim. Some jurisdictions do not require present physical injury, while others do. *Compare, e.g., Bower,* 522 S.E.2d at 430; *Petito v. A.H. Robins, Co.,* 750 So. 2d 103, 105-06 (Fla. Dist. Ct. App. 2000); *Hansen,* 858 P.2d at 977; *Bourgeois,* 716 So. 2d at 359; *Potter v. Firestone Tire & Rubber, Co.,* 863 P.2d 795, 822-23 (Cal. 1993); *Cook v. Rockwell Int'l Corp.,* 755 F. Supp. 1468, 1477 (D. Colo. 1991); *Meyerhoff v. Turner Constr. Co.,* 534 N.W.2d 204, 206 (Mich. Ct. App. 1995); *Ayers,* 525 A.2d at 308, 312; *with, e.g., Burton,* 884 F. Supp. at 1523; *Witherspoon,* 964 F. Supp. at 467; *Abney v. Exxon Corp.,* 755 So. 2d 283, 290 (La. Ct. App. 1999).

## CONCLUSION

In light of the lack of consensus in other jurisdictions and the complex fact pattern of tobacco litigation and causality, we hold that Nevada common law does not recognize a cause of action for medical monitoring. A remedy of medical monitoring may be available for an underlying cause of action, but neither party has briefed the issue nor set forth the cause of action to which it would provide a remedy. Therefore, we do not have enough information to provide an answer to the second certified question.[5]

---

[5]THE HONORABLE CLIFF YOUNG, Justice, did not participate in the decision of this matter.