KELLIE GROTTS, Appellant, *v.* GERTRUDE
ZAHNER, Respondent.

No. 29614

December 13, 1999                    989 P.2d 415

*Law Office of Travis E. Shetler,* Las Vegas, for Appellant.

*Lemons Grundy & Eisenberg* and *Michael R. Montero,* Reno;
*William C. Turner & Associates* and *Richard C. Sipan,* Las
Vegas, for Respondent.

## OPINION

By the Court, MAUPIN, J.:

Appellant, Kellie Grotts (''Grotts''), and her fiancé were involved in an accident with respondent Gertrude Zahner (''Zahner''). Grotts commenced her action below against Zahner seeking ''bystander'' emotional distress damages in connection with fatal injuries sustained by her fiancé in the accident. The district court dismissed her claim of bystander emotional distress on the ground that she was not, as a matter of law, ''closely related'' to her fiancé for these purposes. Grotts appeals.

A bystander who witnesses an accident may recover for emotional distress in certain limited situations. *See* State v. Eaton, 101 Nev. 705, 716, 710 P.2d 1370, 1377-78 (1985) (citing Dillon v. Legg, 441 P.2d 912, 916 (Cal. 1968)). To recover, the witness-plaintiff must prove that he or she (1) was located near the scene; (2) was emotionally injured by the contemporaneous sensory observance of the accident; and (3) was closely related to the victim. *Eaton,* 101 Nev. at 716, 710 P.2d at 1377-78.

In State, Department of Transportation v. Hill, 114 Nev. 810, 816, 963 P.2d 480, 483 (1998), a plurality of this court determined that ''whether a plaintiff can recover [damages] for NIED

[negligent infliction of emotional distress] after witnessing injury to another based on the plaintiff's relationship to the victim is generally a question of fact.'' Acknowledging that obvious cases will exist where the issue of ''closeness'' can be determined as a matter of law, the plurality concluded that the fact finder in most cases should be left with the task of assessing the nature and quality of the claimant's relationship to the victim for these purposes.

We now conclude, contrary to the plurality holding in *Hill,* that standing issues concerning ''closeness of relationship'' between a victim and a bystander should, as a general proposition, be determined based upon family membership, either by blood or marriage. Immediate family members of the victim qualify for standing to bring NIED claims as a matter of law. *See Hill,* 114 Nev. at 820, 963 P.2d at 485 (MAUPIN, J., concurring). When the family relationship between the victim and the bystander is beyond the immediate family,[1] the fact finder should assess the nature and quality of the relationship and, therefrom, determine as a factual matter whether the relationship is close enough to confer standing. This latter category represents the ''few close cases'' where standing will be determined as an issue of fact, either by a jury or the trial court sitting without a jury.[2] *See id.* at 820, 963 P.2d at 485.[3] We therefore hold that any non-family ''relationship'' fails, as a matter of law, to qualify for NIED standing.[4]

In this case, Grotts claims standing to lodge a ''bystander'' NIED claim because of her affianced relationship to the victim. Because she was not a member of his ''family'' by blood or marriage, we hold that she does not enjoy the type of ''close relationship'' required under *Eaton.*[5]

---

[1] Family relationships beyond the first degree of consanguinity.

[2] The *actual* closeness of the family relationship, whether or not the victim and the bystander are immediate family members, is always an issue of fact with respect to damages. State, Dep't of Transp. v. Hill, 114 Nev. 810, 820, 963 P.2d 480, 485 (1998).

[3] Because the test we have adopted is calculated to foster predictability and fairness in these matters, we conclude that the question of standing of ''in-laws'' to bring NIED claims must be left to the fact finder rather than determined as a matter of law. In this, I now retreat somewhat from my concurring position in *Hill.*

[4] Our decision today does not in any way undermine our time-honored system of *stare decisis. Hill* was a plurality opinion that serves as an important signpost in the ongoing debate over the scope of emotional distress remedies. This case resolves, in large part, that debate.

[5] The separate concurrence in *Hill* reflects my reluctance at that time to adopt a rigid rule of standing in these matters. However, the nature of this

For the above reasons, we affirm the trial court.[6]

YOUNG, AGOSTI and BECKER, JJ., concur.

ROSE, C. J., dissenting:

Just a year ago, in State, Department of Transportation v. Hill, 114 Nev. 810, 963 P.2d 480 (1998), we drafted a less rigid and more equitable framework for deciding negligent infliction of emotional distress issues. The majority's departure from the framework set forth in *Hill* prevents that procedure from being tested in our district courts to determine its validity. I believe we are discarding this precedent prematurely.

Legal precedents of this Court should be respected until they are shown to be unsound in principle. As stated by the United States Supreme Court:

> The doctrine of *stare decisis* imposes a severe burden on the litigant who asks us to disavow one of our precedents. For the doctrine not only plays an important role in orderly adjudication; it also serves the broader societal interests in even-handed, consistent, and predictable application of legal rules.

Thomas v. Washington Gas Light Co., 448 U.S. 261, 272 (1980). And as stated by the Supreme Court of Illinois:

> [W]hen a rule of law has once been settled, contravening no statute or constitutional principle, such rule ought to be followed unless it can be shown that serious detriment is thereby likely to arise prejudicial to public interests. [Citations omitted.] The rule of *stare decisis* is founded upon sound principles in the administration of justice, and rules long recognized as the law should not be departed from merely because the court is of the opinion that it might decide otherwise were the question a new one.

Maki v. Frelk, 239 N.E.2d 445, 447 (Ill. 1968).

---

particular claim makes it apparent that these standing issues should be determined based upon intra-family relationships.

[6]In dissent, CHIEF JUSTICE ROSE voices his concern that many close traditional and non-traditional relationships are left out of the *Dillon v. Legg* equation. He correctly observes that many such relationships are far more close and valued than relationships between ''family'' members. However, the majority of this court is of the opinion that this admittedly limited remedy must be subject to objective but fair standards. Without an objective test for standing to seek this type of legal redress, almost any type of close friendship, traditional or otherwise, might form the basis of a triable claim. Thus, this case has nothing to do with and makes no social comment upon persons living non-traditional lifestyles.

THE HONORABLE MYRON E. LEAVITT, Justice, voluntarily recused himself from participation in the decision of this appeal.

The rule adopted by the majority requires a relationship by blood or marriage before one can claim to have a close relationship for purposes of pursuing damages for negligent infliction of emotional distress. While this rule will be predictable, it will permit some people to pursue this claim who have no close relationship, and yet prohibit others who have a loving, close relationship with someone injured or killed from pursuing these claims merely because they are not related by blood or marriage.

The case at issue provides a good example. Kellie Grotts and John Colwell were very much in love and expected to marry in the near future. They were at the zenith of love and commitment. Numerous plays and novels have been written about the great loss suffered when this type of relationship ends with the death of one party. Yet the majority denies Kellie Grotts' claim for emotional distress caused as a result of witnessing the death of the love of her life and constant companion simply because their wedding date was a few months off. This same scenario could happen to an older man and woman who, for a variety of reasons, had lived together for years but were not formally married.

And the unfairness of the rule adopted today does not stop there. Anyone living in a non-traditional relationship will be denied the chance to recover emotional distress damages, while those living together with benefit of marriage will not suffer such prejudice. It is a fact of life that many gay men and lesbian women have partners with whom they have lived for decades and shared a close, loving relationship. These individuals will be denied the right to even claim damages for emotional distress for witnessing injury or death to their partner for no other reason than that they are not legally married, a status they cannot prevent. The closeness of two people should be judged by the quality and intimacy of the relationship, not by whether there is a blood relationship or whether a document has been filed at the court house. A segment of our population should not be denied legal redress simply because of their lifestyle.

The rule we adopted in *Hill* permits a judge to first scrutinize the claim of emotional distress to determine if the relationship is sufficiently close to create an issue of fact to present to a jury. State, Dep't of Transp. v. Hill, 114 Nev. at 816, 963 P.2d at 484 (1998). If it is, the jury will then hear all the facts of the case, including the nature of the relationship existing between the plaintiff and the party injured or killed. We ask juries to make all sorts of difficult determinations and deciding the closeness of a relationship is a judgment juries are uniquely qualified to make. Leaving this factual determination to the jury would give Nevada a reasonably flexible rule that does not arbitrarily bar those who

would otherwise be able to establish a close relationship. The majority of this court once saw the wisdom of this rule.

Accordingly, I dissent.

SHEARING, J., dissenting:

I would reverse the judgment of the district court and remand the case for trial. In cases involving claims of negligent infliction of emotional distress, the question of whether the plaintiff is closely related to the victim is generally a fact question to be determined by the jury. State, Dep't of Transp. v. Hill, 114 Nev. 810, 816, 963 P.2d 480, 483 (1998). The fact finder should have the opportunity to assess the nature and quality of the relationship between the plaintiff and the victim whose injury or death was witnessed by the plaintiff. *Id.* To exclude a fiancé as a ''closely related person'' seems especially to put the form over the substance of the relationship.