5 P.3d 267 (2000)
197 Ariz. 553
Nanette HISLOP, a single woman; on her own behalf and on behalf of her minor sons, Adam, Jacob and James Hislop, Plaintiff-Appellant,
v.
SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, a political subdivision of the State of Arizona; Dycom Industries, Inc., a corporation doing business in Arizona; S.T.S., Inc., a corporation doing business in Arizona, Defendants-Appellees.
Michael McLaurin and Debra McLaurin, husband and wife; on their own behalf, and on behalf of their minor daughters, Latasha, Carrie, Michelle and Sherry McLaurin, Plaintiffs-Appellants,
v.
Salt River Project Agricultural Improvement and Power District, a political subdivision of the State of Arizona; Dycom Industries, Inc., a corporation doing business in Arizona; S.T.S., Inc., a corporation doing business in Arizona, Defendants-Appellees.
No. 1 CA-CV 98-0232.
Court of Appeals of Arizona, Division 1, Department B.
May 2, 2000.
Joseph Abodeely, Phoenix, Attorney for Appellant Hislop.
*268 Davis McKee & Forshey, P.C. by Timothy A. Forshey, Phoenix, Attorneys for Appellants McLaurin.
Jennings, Strouss & Salmon, P.L.C. by Barry E. Lewin, James M. Ackerman, Jennifer M. Bligh, Phoenix, Attorneys for Appellees.

OPINION
SULT, Judge.
¶ 1 In this appeal we are asked to expand the category of claimants who can recover damages for emotional distress caused by witnessing harm to another. Specifically, appellants request that they be permitted to pursue a claim for the distress they experienced at witnessing the electrocution and burning of their co-worker and friend caused by the negligence of appellees. Because we conclude that current Arizona law does not require that appellants be permitted to prosecute their claim, and because we believe that sound policy reasons favor denying recovery on such a claim, we affirm the trial court's grant of summary judgment to appellees.

BACKGROUND
¶ 2 Appellants Nanette Hislop and Michael McLaurin worked with Larry Matthews on a City of Phoenix sewer service crew. On August 22, 1995, Matthews was working in an open trench repairing a sewer main. Appellants were standing at the edge of the trench, just inches away from Matthews.
¶ 3 Matthews was using a jackhammer to break some concrete surrounding the sewer pipe when the jackhammer struck a highvoltage underground power line. Matthews burst into flames as electricity coursed through his body. The fireball emitted by the electrocution shot up out of the trench some four to six feet and momentarily engulfed appellants, although they were not burned.
¶ 4 Appellant Hislop ran to the truck to radio for help. Appellant McLaurin seized a nearby fire extinguisher and put out the flames that were consuming Matthews. McLaurin then climbed into the trench and carried the unconscious Matthews to the surface. Matthews died three weeks later.
¶ 5 Appellants sued appellees, and among other claims, they sought recovery for negligent infliction of emotional distress for witnessing Matthews' electrocution. Appellants alleged that they both had been close friends of Matthews, had been in the "zone of danger" when he was electrocuted, and had suffered mental, physical, and emotional injuries as the result of witnessing the injury to Matthews.
¶ 6 Appellees filed a motion for summary judgment, arguing that a claim for bystander emotional distress is available only to a plaintiff who has witnessed an injury to a close family member. Because appellants were not family members, appellees argued, they were not entitled to maintain such a claim.
¶ 7 The trial court agreed, noting that Arizona has never permitted anyone other than an actual family member to recover for bystander emotional distress. On the question whether recovery ought to be expanded for such a claim, the trial court referred to California law and noted that recovery in that state is denied to friends, housemates, or those who have merely a meaningful relationship to the victim. Based thereon, the trial court declined to extend recovery for bystander emotional distress to encompass close friends, noting that "the emotional trauma sustained by [appellants] was not reasonably foreseeable where the attachment to the victim derived from association as a friend, and not as a member of the victim's family."
¶ 8 The parties stipulated to the dismissal of the remaining negligence and negligence per se claims. Appellants timely appealed.

ISSUES
¶ 9 Appellants claim that existing Arizona law sanctions recovery for bystander emotional distress even when the bystander is not a family member of the principal victim. Appellants also implicitly argue that if existing case law does not extend liability this far, we should do so.

*269 ANALYSIS
¶ 10 Appellants first argue that in Keck v. Jackson, 122 Ariz. 114, 593 P.2d 668 (1979), our supreme court held that a person could recover for emotional distress caused by witnessing an injury to a non-family member. In Keck, the court enumerated three factors that must be established to recover for emotional distress from witnessing harm to another: (1) "the shock or mental anguish of the plaintiff must be manifested as a physical injury"; (2) "the emotional distress must result from witnessing an injury to a person with whom the plaintiff has a close personal relationship, either by consanguinity or otherwise"; and (3) "the plaintiff/bystander must himself have been in the zone of danger so that the negligent defendant created an unreasonable risk of bodily harm to him." Id. at 115-16, 593 P.2d at 669-70.
¶ 11 In this case, there is no dispute that appellants satisfied elements one and three. The issue is whether their status as "coworker and close personal friend" to Matthews satisfies the Keck requirement that the claimant have a "close personal relationship, either by consanguinity or otherwise" with the victim.
¶ 12 We acknowledge that Keck's language regarding the required relationship, particularly the "or otherwise" phrase, could arguably be interpreted to include "co-worker and friend" as a relationship with sufficient standing to permit recovery. However, we do not believe the Keck court intended to go that far.
¶ 13 Certainly, the facts of Keck do not require such a conclusion as the case involved a daughter who witnessed the death of her mother. Id. at 114, 593 P.2d at 668. We also note that the great weight of authority nationwide at the time Keck was decided would have denied recovery based solely on friendship or co-worker status. See William L. Prosser, Law of Torts § 54, at 334-35 (4th ed.1971); John S. Herbrand, Annotation, Relationship Between Victim and Plaintiff-Witness as Affecting Right to Recover Damages in Negligence for Shock of Mental Anguish at Witnessing Victim's Injury or Death, 94 A.L.R.3d 486, 1979 WL 52294 (1979). If Keck had intended such a significant expansion of bystander recovery, we believe the court would have taken pains to announce it clearly.
¶ 14 We believe that what Keck meant by "or otherwise" can be discerned from the court's use of Leong v. Takasaki, 55 Haw. 398, 520 P.2d 758 (1974), to illustrate that phrase. Leong sanctioned a recovery by a ten-year-old boy for mental and emotional distress as a result of witnessing the death of his step-grandmother. 520 P.2d at 760. In justifying this result, the Leong court relied not only on the fact that the step-grandmother had lived with the boy and cared for him as a natural grandmother but also on the nature of Hawaiian and Asian families, where it is not uncommon for members of three or four generations to live in one household. Id. at 766. Keck appears to be saying, in essence, that while Arizona will not adhere strictly to a blood relationship requirement, there must still be a familial relationship, or something closely akin thereto, between the victim and the bystander to warrant the bystander's inclusion as a recognized claimant. Keck does not, contrary to appellants' contention, require recognition of their "coworker and friend" status as includable in the category of those who qualify for bystander recovery.
¶ 15 While Keck does not mandate recognition of appellants' claim, neither does it directly preclude us from considering expanding the category of persons who may recover for bystander emotional distress. It is true that as we read Keck, the court preferred a close, familial-type relationship between victim and bystander on which to base recovery. However, because Keck involved a parentchild relationship, the court's discussion of this element of recovery was merely illustrative. It was not intended to foreclose consideration of other relationships and whether they could support a recovery for emotional distress. Tort law develops in an evolutionary fashion, and the "expansion of tort law claims is peculiarly within the realm of our judicial ... system." Reben v. Ely, 146 Ariz. 309, 311, 705 P.2d 1360, 1362 (1985) (recognizing claim for filial loss of consortium). We therefore turn to whether Arizona should *270 sanction recovery for emotional distress for a bystander who is a "co-worker and friend."
¶ 16 Before we address this, the principal issue, we must choose which analytical framework to employ, one based in theory or one based in policy. California, a state with an extensive jurisprudential history regarding bystander recovery for emotional distress, has elected to use negligence theory for the framework within which the specific question of who may recover should be determined. In the seminal case of Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), the California Supreme Court settled on "foreseeability" as the factor by which courts should judge whether a particular claimant could recover. In granting recovery to a mother who witnessed the death of her daughter, the court noted that "recovery should be had in such a case if defendant should foresee fright or shock severe enough to cause substantial injury in a person normally constituted." Id. at 920. To determine foreseeability, courts should take into account, inter alia, whether the "plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." Id.; cf. Drew v. Drake, 110 Cal.App.3d 555, 168 Cal.Rptr. 65, 65-66 (1980) (denying recovery for bystander distress to person who lived three years with victim as de facto spouse because relationship too remote to satisfy foreseeability test).
¶ 17 We do not find the foreseeability framework to be a particularly useful mechanism by which to ascertain and delimit a tortfeasor's liability to a bystander for emotional distress. If applied honestly, foreseeability would permit recovery in all situations where the ordinary person could reasonably predict that observing injury to another would significantly distress the particular observer. Here, for example, we could not with a straight face maintain that it was not reasonably foreseeable that appellants would suffer significant emotional distress at seeing their close friend and co-worker engulfed in a ball of fire. Alternatively, foreseeability can be skewed beyond recognition when a court, making what in effect is a policy decision, decides on the basis of a lack of foreseeability that a certain type of bystander should not be permitted to recover for emotional distress. See, e.g., Trapp v. Schuyler Construction, 149 Cal.App.3d 1140, 197 Cal.Rptr. 411, 412 (1983) (minor appellants as close friends, first cousins, and regular playmates of the minor deceased did not meet the Dillon foreseeability criteria); Kately v. Wilkinson, 148 Cal.App.3d 576, 195 Cal.Rptr. 902, 907, (1983) (best friends akin to natural sisters insufficient to satisfy foreseeability test of Dillon).
¶ 18 Confining a liability decision to the theoretical construct of a foreseeability analysis precludes consideration of other factors that, as a matter of good policy, ought to enter into a decision concerning where the lines of liability are to be drawn. We are cautioned, correctly, that in descrying the outer limits of liability for negligence, we should not attempt to mask the policy aspects inherent in such a decision. See Rogers v. Retrum, 170 Ariz. 399, 403, 825 P.2d 20, 24 (1991) (acknowledging policy considerations affecting determination as a matter of law that there was no negligence on the part of a school district in not having a closed campus). A necessary corollary, we believe, is that when the liability question is one that is peculiarly susceptible to determination by reference to policy concerns, we should straightforwardly decide it on that basis and not attempt to shoehorn policy considerations into an ill-fitting theoretical construct.
¶ 19 We believe that for the question presented here, namely what type of relationship must exist to justify recovery for bystander emotional distress, a foreseeability analysis is unworkable and cannot lead to an acceptable resolution for all circumstances.[1] Rather, we conclude that the determination *271 should rest entirely on policy considerations. See Napier v. Bertram, 191 Ariz. 238, 244, ¶ 21, 954 P.2d 1389, 1395, ¶ 21 (1998) (concluding after review of competing policies that it would be inappropriate to recognize a negligence duty by insurance agent to nonclient); cf. Bovsun v. Sanperi, 61 N.Y.2d 219, 473 N.Y.S.2d 357, 461 N.E.2d 843, 847 (1984) ("[D]elineation of limits of liability in tort actions is usually determined on the basis of consideration of public policy."). We turn now to a discussion of those considerations.
¶ 20 Militating in favor of allowing recovery is Arizona's strong policy interest "in fully compensating injured plaintiffs to make them whole. Thus, Arizona allows unlimited recovery for actual damages, expenses for past and prospective medical care, past and prospective pain and suffering, lost earnings, and diminished earning capacity." Bryant v. Silverman, 146 Ariz. 41, 47, 703 P.2d 1190, 1196 (1985). Emotional distress must be included in this listing because "Arizona courts long ago abandoned a skeptical attitude toward emotional injuries and have increasingly been willing to compensate those having validity." Barnes v. Outlaw, 192 Ariz. 283, 286, 964 P.2d 484, 487 (1998). Moreover, the relationship of "co-worker and friend" is a valued one in our society, encompassing many of the human virtues we cherish, and is therefore worthy of consideration for protection under the law of torts when the emotional component of the relationship is negligently harmed.
¶ 21 Notwithstanding these compelling reasons, courts have been slow to extend protection beyond the ambit of the family. Cf. Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 557, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) (in imposing zone of danger rule for emotional distress claim under Federal Employers' Liability Act, the court noted the common-law restrictions on such claims and commented "[w]e believe the concerns that underlie the common-law tests, and particularly the fear of unlimited liability, to be well founded"). But see Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759, 766-67 (1983) (stating that a strict blood relationship is not required for bystander recovery). The primary reason for limiting the category of those who can recover for bystander distress has been expressed by a leading commentator thus:
It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends.
W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 366 (5th ed.1984). This worry has been echoed by many courts as they face the difficult task of drawing the line between those who may recover and those who may not. See, e.g., Elden, 250 Cal.Rptr. 254, 758 P.2d at 588 (excluding unmarried cohabitant while recognizing that such a relationship can offer as much affection, solace, and support as is found in the immediate family setting); Gates v. Richardson, 719 P.2d 193, 198-99 (Wyo.1986) (limiting bystander distress recovery to those included by the legislature in the wrongful death statute, thereby excluding "a business partner or a friend"). A dominant concern has been the perceived need to maintain a proportionate economic relationship between liability and culpability, the failure to do which underlies much of the criticism of the foreseeability test. Richard S. Miller, The Scope of Liability for Negligent Infliction of Emotional Distress: Making "The Punishment Fit the Crime," 1 U. Haw. L.Rev. 1, 33-36 (1979); Richard N. Pearson, Liability to Bystanders for Negligently Inflicted Emotional Harm-A Comment on the Nature of Arbitrary Rules, 34 U. Fla. L.Rev. 477, 512 (1982).
¶ 22 This possibility of an unreasonable burden being placed on defendants is magnified by the obvious difficulty of drawing principled limiting distinctions once bystander recovery moves beyond the category of family. If recovery is extended to a "co-worker and friend," why not just a co-worker, or why not just a friend? The New Mexico Supreme Court's answer was to decide that "[t]he tort of negligent infliction of emotional distress is a tort against the integrity of the family *272 unit." Ramirez v. Armstrong, 100 N.M. 538, 673 P.2d 822, 825 (1983), overruled on other grounds, Folz v. State, 110 N.M. 457, 797 P.2d 246 (1990). Consequently, the court specifically limited the action to husband and wife, parent and child, grandparent and grandchild, brother and sister, and to persons who occupy a legitimate position in loco parentis. Ramirez, 673 P.2d at 825; see also Elden, 250 Cal.Rptr. 254, 758 P.2d at 588 (cautioning that recognizing a de facto marriage relationship opens the door to many other kinds of de facto family relationships, causing multiplication of actions and damages).
¶ 23 We do not need to decide here precisely where the outer limit of liability lies, whether it extends beyond the family unit or not. Because this is still a developing area of the law, see generally, J. Mark Appleberry, Negligent Infliction of Emotional Distress: A Focus on Relationships, 21 Am. J.L. & Med. 301 (1995), we confine our holding to the specific facts presented to us, as we believe the better approach is to decide questions of qualifying relationships on a case-bycase basis. We therefore leave for another court and another time the question whether Arizona should circumscribe recovery for bystander emotional distress as California and New Mexico have done, or whether we can, and should, recognize and protect the many quasi-family relationships that exist in today's society. See Dunphy v. Gregor, 136 N.J. 99, 642 A.2d 372, 380 (1994) (extending category of bystanders who can recover to unmarried cohabitant who had an "intimate familial relationship" with the decedent).
¶ 24 We do hold that in Arizona a coworker and friend of a negligently injured person cannot recover for the emotional distress suffered from witnessing the injury to that person. Simply put, we conclude that the policies in favor of allowing such a recovery are insufficiently persuasive to justify placing what we perceive to be an unreasonable economic burden on negligent defendants, a perception that is shared by other courts and commentators. Requiring payment for the bystander emotional distress of a co-worker and friend would be out of proportion to the culpability inherent in conduct that is merely negligent. We therefore decline to impose such a requirement.
¶ 25 A brief word regarding the dissent. Our colleague apparently believes that Keck's use of the phrase "or otherwise" resolves the issue, concluding that our supreme court intended that the jury in each case should decide whether the particular relationship involved supports a recovery. Infra ¶¶ 30, 33. Unlike the dissent, we do not believe that the phrase conclusively settles the matter or that the Keck court intended that it should. A fair reading of the case demonstrates that the court was primarily concerned with establishing generally the limits on recovery for bystander emotional distress to which Arizona courts would adhere in the future. When faced with such a chore, an appellate court will often choose words with the potential for a broader application than the case before it requires, not because the court presently intends the broader application, but because the court does not want to hamstring later courts who will be asked to finetune the seminal decision by applying it to different facts. To read Keck as broadly as does our dissenting colleague disserves this evolutionary process by foreclosing the caseby-case consideration of different relationships as each is presented. While such a leap may sometimes be appropriate in the judicial development of tort law, it should be accompanied by more justification than the dissent offers here.
¶ 26 Our colleague also appears to conclude that we interpret Keck as definitively limiting recovery to a bystander who has a blood or familial relationship with the injured party and that we approve such a limitation. Infra ¶ 30, 33. This is not our position; rather, we reiterate that Keck neither precludes consideration of non-familial relationships nor mandates their recognition. Whether any of the quasi-familial relationships discussed in the dissent's cited authorities would be recognized in Arizona is a question for a court other than this one. We hold only that for policy reasons, the relationship of "co-worker and friend" will not be recognized because it is, in the words of one of the dissent's authorities, "outside the range of circumstances within which there may be liability." Dziokonski *273 v. Babineau, 375 Mass. 555, 380 N.E.2d 1295, 1302 (1978) (in a case involving parents and an injured child, the court abandoned the "impact rule" and established a rule of recovery dependent, inter alia, on "what degree there was of familial or other relationship").

CONCLUSION
¶ 27 While we do not adopt the trial court's foreseeability analysis, we find that it reached the correct result. We therefore affirm the grant of summary judgment to appellees.
CONCURRING: MICHAEL D. RYAN, Judge.
GARBARINO, Judge, dissenting.
¶ 28 The majority affirms the trial court's grant of summary judgment and concludes that a co-worker and friend of a negligently injured person cannot recover for emotional distress suffered from witnessing the injury to that person. Because I believe that relationships between co-workers and friends can be enduring, substantial, and sealed by strong emotional bonds, and are therefore appropriate for jury consideration, I respectfully dissent.
¶ 29 Appropriately, the majority looks first to the laws of Arizona and then cites our supreme court in Keck, which they contend limits the right to recover to a party who has a blood or familial relationship with the injured party. In Keck, the court was dealing with a situation in which a daughter witnessed an injury to her mother. See 122 Ariz. at 114, 593 P.2d at 668. However, the emphasis of the court's decision was directed toward recognition, for the first time in Arizona, of the tort itself. See id. at 115-16, 593 P.2d at 669-70.
¶ 30 Although it was not the crux of the case, in setting out the elements required for the tort of negligent infliction of emotional distress, the Keck court limited the right to recover to a party who has a "close personal relationship, either by consanguinity or otherwise," with the victim. Id. at 116, 593 P.2d at 670. The majority now concludes that the Keck court meant to limit recovery to those who have a close, familial type relationship with the victim. To support this theory of limitation, the majority points to the Keck court's references to Prosser's treatise on torts and the Hawaii case of Leong. I believe that if the supreme court had preferred to establish a relationship limitation, it would have so stated and would not have appended the words "or otherwise."
¶ 31 The Keck court referred to a statement from the fourth edition of Prosser's treatise that there should be some limitation on recovery for emotional distress and that "[t]he action might, at least initially, well be confined to members of the immediate family of the one endangered, or perhaps to husband, wife, parent, or child, to the exclusion of mere bystanders, and remote relatives." William L. Prosser, Handbook of the Law of Torts, § 54, at 335 (4th ed.1971). However, the fifth edition of the treatise omits the above-quoted language:
It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends.
W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 366 (5th ed.1984). Although the fifth edition speaks about distant relatives and friends, it puts them in the context of a person who merely hears about an accident, but does not witness it. This is a concept with which Arizona law is in accord.
¶ 32 The Hawaii case cited in Keck held that a step-grandson could bring a claim for negligent infliction of emotional distress after witnessing the death of his step-grandmother, even though the two shared no blood ties. Leong, 520 P.2d at 766. The majority emphasizes the Hawaii Supreme Court's discussion of the strong ties that exist among Hawaiian and Asian family members and the existence of a quasi-family relationship in Leong. However, the Leong court took its analysis one step further when it stated that *274 a plaintiff "should be permitted to prove the nature of his relationship to the victim and the extent of damages he has suffered because of this relationship." Id. Similarly, following its reference in Keck to the fourth edition of Prosser's treatise on torts and Leong, our supreme court stated, "The problem of limiting bystander recovery can be justly resolved by treating each case on its own individual facts...." 122 Ariz. at 116, 593 P.2d at 670.
¶ 33 The majority also relies on California case law, which they believe supports limiting recovery to close family relationships to the exclusion of unmarried co-habitants and friends. However, it appears to me that California may be making a policy decision about relationships that I believe would best be left to our legislature.
¶ 34 Many states are moving in the direction of allowing a jury to decide the magnitude of the relationship between a plaintiff and the injured person. As the majority points out, the New Jersey Supreme Court has interpreted its requirement that a plaintiff demonstrate "a marital or intimate, familial relationship between the plaintiff and the injured person" to potentially include co-habitants, fiancés, and others with strong emotional bonds. Dunphy, 642 A.2d at 374, 380. New Jersey leaves it to the jury to determine the "intimacy and familial nature of such a relationship." Id. at 378. A New Jersey jury must consider the following factors:
[T]he duration of the relationship, the degree of mutual dependence, the extent of common contributions to a life together, the extent and quality of shared experience, and ... "whether the plaintiff and the injured person were members of the same household, their emotional reliance on each other, the particulars of their day to day relationship, and the manner in which they related to each other in attending to life's mundane requirements."
Id. (quoting Dunphy v. Gregor, 261 N.J.Super. 110, 617 A.2d 1248, 1255 (1992)). In concluding that it should be left to the jury to determine the nature of the relationship that existed between the plaintiff and the injured person, the court stated:
Our courts have shown that the sound assessment of the quality of interpersonal relationships is not beyond a jury's ken and that courts are capable of dealing with the realities, not simply the legalities, of relationships to assure that resulting emotional injury is genuine and deserving of compensation.... Likewise, each time a court or jury assesses damages for loss of consortium, the quality of the relationship and thus the severity of the loss must be inquired into by the factfinder.
. . . .
[W]e are unpersuaded ... that without a "bright line" definition of the bystandervictim relationship, courts will not be able to counteract fraudulent and meretricious claims. That consideration does not outweigh the need to recognize claims that are legitimate and just.
Id. at 378 (citations omitted).
¶ 35 The Massachusetts Supreme Court has also recognized that the nature of the relationship between a bystander-plaintiff and the injured person is an issue that can be resolved by the jury. It stated:
Every effort must be made to avoid arbitrary lines which "unnecessarily produce incongruous and indefensible results." The focus should be on underlying principles.... [W]hether there should be liability for the injury sustained depends on a number of factors ... [including] what degree there was of familial or other relationship between the claimant and the third person.... In some instances, it will be clear that the question is properly one for the trier of fact, while in others the claim will fall outside the range of circumstances within which there may be liability.
Dziokonski v. Babineau, 380 N.E.2d at 1302 (citations omitted).
¶ 36 In a case with facts similar to ours, the Ohio Court of Appeals held that even though Ohio allows recovery for bystanders who are close friends of the injured person, the plaintiff in that case did not demonstrate as a matter of law that she had a close enough relationship with her injured friend to warrant recovery. See Smith v. Kings Entertainment Co., 99 Ohio App.3d 1, 649 N.E.2d 1252, 1253 (1994). In Smith, a group *275 of friends was walking across a bridge at an amusement park when one of the people in the group touched a stream of water coming from a fountain. See id. at 1252. The water was electrically charged, and he received a "surge of electricity [that] caused him to lose consciousness and to fall into the pond." Id. Another member of the group, Haithcoat, jumped in the water to help his friend and was also electrocuted. See id. Haithcoat died as a result of his injuries. See id. at 1253. The plaintiff, Smith, was a member of the group and witnessed the whole ordeal. See id. at 1252-53. The majority found that her claim failed as a matter of law because under Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983), the trial court makes an initial determination whether the relationship was sufficiently close so that the injury was foreseeable. See Smith, 649 N.E.2d at 1253. Despite the fact that Smith and Haithcoat had frequent contact with each other, the majority concluded that the relationship was not sufficiently close in this case because of the short duration of the friendship (one and one-half years) and the lack of romantic involvement between the two friends. See id. However, the dissenting judge wanted to go even further:
The fact that Smith and Haithcoat were only friends has, to me, a bearing only on the extent of her damages, not on her right to recover. The jury can easily be instructed that that is one factor they may consider when determining her damages. I believe this is consistent with the flexible case-by-case approach suggested in Paugh.

Id. at 1254.
¶ 37 Finally, I find favor in a dissent by the chief justice of the Nevada Supreme Court on this point. See Grotts v. Zahner, 989 P.2d 415, 417-18 (Nev.1999). In Grotts, the majority of the Nevada Supreme Court overturned the plurality opinion in Nevada ex rel. Department of Transportation v. Hill, 114 Nev. 810, 963 P.2d 480 (1998), which held that the determination of the closeness of the relationship between the bystander and the person injured is generally a question for the jury, but a trial court could determine as a matter of law that the relationship was not sufficiently close in a given case. See Hill, 963 P.2d at 484. In Hill, Justice Rose opined:
For example, a rule that would deny recovery to a plaintiff who "merely because of happenstance" witnesses the death or injury to his fiancee in an accident which occurs on the way to the wedding ceremony, yet permits recovery if an accident occurs on the couple's way to the wedding reception, is fallacious.
963 P.2d at 483. The majority in Grotts decided to reject the plurality in Hill and draw a bright-line rule that any non-family relationship would fail as a matter of law, and even family relationships beyond the immediate family would be closely scrutinized. See Grotts, 989 P.2d at 416. In his dissent, now Chief Justice Rose defended Hill and chastised the majority for prematurely rejecting it, stating:
The rule adopted by the majority requires a relationship by blood or marriage before one can claim to have a close relationship for purposes of pursuing damages for negligent infliction of emotional distress. While this rule will be predictable, it will permit some people to pursue this claim who have no close relationship, and yet prohibit others who have a loving, close relationship with someone injured or killed from pursuing these claims merely because they are not related by blood or marriage.
The case at issue provides a good example. Kellie Grotts and John Colwell were very much in love and expected to marry in the near future. They were at the zenith of love and commitment. Numerous plays and novels have been written about the great loss suffered when this type of relationship ends with the death of one party. Yet the majority denies Kellie Grotts' claim for emotional distress caused as a result of witnessing the death of the love of her life and constant companion simply because their wedding date was a few months off. This same scenario could happen to an older man and woman who, for a variety of reasons, had lived together for years but were not formally married.
And the unfairness of the rule adopted today does not stop there. Anyone living in a non-traditional relationship will be denied *276 the chance to recover emotional distress damages, while those living together with benefit of marriage will not suffer such prejudice. It is a fact of life that many gay men and lesbian women have partners with whom they have lived for decades and shared a close, loving relationship. These individuals will be denied the right to even claim damages for emotional distress for witnessing injury or death to their partner for no other reason than that they are not legally married, a status they cannot prevent. The closeness of two people should be judged by the quality and intimacy of the relationship, not by whether there is a blood relationship or whether a document has been filed at the court house. A segment of our population should not be denied legal redress simply because of their lifestyle.
The rule we adopted in Hill permits a judge to first scrutinize the claim of emotional distress to determine if the relationship is sufficiently close to create an issue of fact to present to a jury. If it is, the jury will then hear all the facts of the case, including the nature of the relationship existing between the plaintiff and the party injured or killed. We ask juries to make all sorts of difficult determinations and deciding the closeness of a relationship is a judgment juries are uniquely qualified to make. Leaving this factual determination to the jury would give Nevada a reasonably flexible rule that does not arbitrarily bar those who would otherwise be able to establish a close relationship. The majority of the court once saw the wisdom of this rule.
Id. at 417-18 (citation omitted).
¶ 38 In the case before us, appellants claim that the evidence supports the conclusion that their relationship with Matthews was like that of siblings. One can speculate that the testimony elicited by appellees will be to the contrary, leaving the fact finder to draw its own conclusions. Whatever the magnitude of appellants' relationship with Matthews, the determination is something that should be decided by a jury. Juries return verdicts in difficult cases every day. I do not believe that it is too much to ask a jury to decide if a plaintiff's personal relationship with the injured party would support a cause of action for negligent infliction of emotional distress.
¶ 39 The majority admits reluctance to extend the outer limits of recovery for negligent infliction of emotional distress. Yet, for these plaintiffs, that is exactly what the court has done. The distinction that I make is that the determination should be for the jury. I would reverse the trial court's grant of appellees' motion for summary judgment.
NOTES
[1] California has moved away from exclusive reliance on foreseeability. In Elden v. Sheldon, 46 Cal.3d 267, 250 Cal.Rptr. 254, 758 P.2d 582 (1988), a case denying recovery for bystander emotional distress to a participant in an unmarried but stable cohabitation relationship, the California Supreme Court indicated that Dillon did not foreclose considerations of policy and such considerations could "dictate a cause of action should not be sanctioned no matter how foreseeable the risk." Id. at 586; see also Thing v. La Chusa, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814, 827 (1989) (affirming the role of policy considerations in defining scope of liability).