No. 19-0415 – *SER Maxxim Shared Serv. v. McGraw*

WORKMAN, J., dissenting:

FILED

**November 14, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

From a policy perspective, the majority's refusal to permit development of facts in support of a claim for negligent infliction of emotional distress by anyone other than a person of marital or familial relation ignores the fact that other significant human relationships may be sufficiently emotionally close to be equated with that generally created by marriage or family.

From a legal perspective, if the majority's goal was to apply the law enunciated in *Heldreth v. Marrs*, 188 W. Va. 481, 425 S.E.2d 157 (1992), no new syllabus point was even necessary to rule in favor of petitioner inasmuch as Mr. Blankenship never alleged or purported to be in a marital or familial relationship with the victim, Mr. Workman. A simple reference to *Heldreth's* "closely related" holding would be all that was necessary to find the claim invalid and issue the writ. Further, if the majority wanted to illuminate the meaning of "closely related" by lifting the more specific language contained in the body (but not in the syllabus point) of *Heldreth*—i.e. a "close *marital* or *familial* relationship"—it could have created a new syllabus point doing so. *Id*. at 487, 425 S.E.2d at 163 (emphasis added). Instead, it inartfully discusses these concepts and in so doing, haphazardly injects the issue of whether "familial relationship" requires *blood* relation with its repeated reference to "blood or marriage" in the body of the opinion. As is evident, whether "familial" relationship requires "blood relation" is in no way in

1

controversy in this case inasmuch as Mr. Blankenship and the victim were only alleged to be friends and co-workers.[1]

Moreover, while the majority asserts that the opinion is in lockstep with other jurisdictions, a review of other jurisdictions actually reveals a disparate treatment of the central issue: "The tort of negligent infliction of emotional distress has bedeviled courts and commentators for over 100 years. The lack of agreement on the appropriate rule and the seeming arbitrariness of each states' rule illustrate the continuing problems besetting this area of tort law." Uhl, Thomas T., *Bystander Emotional Distress: Missing an Opportunity to Strengthen the Ties That Bind*, 61 Brook. L. Rev. 1399, 1403–04 (1995). Implicitly then, the majority's establishment of rigid boundaries serves the sole purpose of ease of application. However, as the New Jersey Supreme Court observed, the concern for "counteract[ing] fraudulent and meretricious claims" should not "outweigh the need to recognize claims that are legitimate and just." *Dunphy v. Gregor*, 642 A.2d 372, 378 (N. J. 1994). Certainly many such claims, in absence of a marital or familial relationship, may well prove insufficient to permit recovery; however, without an examination of the

---

[1] *See State Farm Mut. Auto. Ins. Co. v. Schatken*, 230 W. Va. 201, 210, 737 S.E.2d 229, 238 (2012) ("[W]e have traditionally held that 'courts will not . . . adjudicate rights which are merely contingent or dependent upon contingent events, as distinguished from actual controversies.' . . . 'Indeed, a matter must be ripe for consideration before the court may review it. Courts must be cautious not to issue advisory opinions.'" (quoting *Zaleski v. West Virginia Mut. Ins. Co.*, 224 W.Va. 544, 552, 687 S.E.2d 123, 131 (2009) (citations omitted))).

evidence regarding the relationship between the victim and bystander, valid claims will be excluded and render an injustice.

But even absent the majority's preemptive exclusion of Mr. Blankenship's claim, its opinion is problematic. In *Heldreth*, written nearly thirty years ago, this Court required a plaintiff seeking to bring a negligent infliction of emotional distress claim to establish that he or she was "closely related" to the injury victim. Syl. Pt. 2, in part, 188 W. Va. 481, 425 S.E.2d 157. In *dicta*, the *Heldreth* Court referenced the "close marital or *familial* relationship" contemplated by the phrase "closely related." *Id*. at 487, 425 S.E.2d at 163 (emphasis added).

The majority's new syllabus point now holds (somewhat unnecessarily given the language of *Heldreth*) that an "unrelated co-worker" may not recover for negligent infliction of emotional distress. However, it casually tosses about the phrase "*blood* or marriage" in the opinion and boldly declares that "[t]his State's law on bystander recovery for negligent infliction of emotional distress is consistent with the vast majority of jurisdictions across the country that interpret 'closely related' to mean marital or *blood* relations." (emphasis added). Does the majority now suggest that, in West Virginia, only those of marital or *blood*—rather than *familial*—relation satisfy the *Heldreth* "closely related" requirement? Is its declaration of our "consistency" with other such jurisdictions intended to tacitly adopt such a narrow interpretation of "closely related"? If so, on what

3

justification does the majority draw this drastic and arbitrary line?  If not, what does this statement actually mean going forward?

Any such backhanded narrowing of "*familial* relationship" to "*blood* relationship"—even in dicta—creates an astounding degree of unnecessary confusion on the state of our law.   Under *Heldreth*, an in-law, step-relative, or adoptive family member—or even those who live in a familial-type construct—would be permitted to recover.  The majority's inartfully suggested narrowing of "familial" to "blood" relation would exclude these individuals from the ability to recover for emotional distress caused by witnessing the serious injury or death of family members.  By way of example of its absurdity, if a biological child, a step-child, and an adoptive child all witness their mother seriously injured or killed, only the biological child could recover for negligent infliction of emotional distress under the majority's implicit definition of "familial relation."[2]   To whatever extent the majority did not intend to suggest such a drastic potential alteration to our existing law, its careless wording has created nothing more than unnecessary confusion.[3]

---

[2] As the mother of three children, one of whom is adopted, it is disturbing to think that the majority opinion discounts the relationship between me and my child (and other adoptive families) because we are not "blood."

[3] This criticism is more than semantics or legal sophistry.  While certainly *dicta* is not binding upon West Virginia courts, the language of the Court's opinions is instructive and elucidates its syllabus points.  Had the majority wished to alter the *Heldreth* rule of

From a broader perspective, as indicated, the majority's out-of-hand rejection of Mr. Blankenship's claim is equally precipitous. As the circuit court below observed, an inflexible rule which limits recovery for negligent infliction of emotional distress to only those who are married or of a traditional familial relationship is as arbitrary as it is unfair. This "line in the sand" elevates formal relationships over real ones. It permits recovery to those who fulfill legalistic requirements but may have no substantial emotional connection to the injured party and simultaneously denies recovery to those who may have such a connection, but lack the formality the rule requires. As the New Jersey Superior Court observed, whether a relationship is sufficient to warrant a claim of bystander liability should "not [] be determined by application of a verbal formula but rather by particularized

---

"marital or familial" relation, it should have done so forthrightly in a syllabus point, rather than slipping such a newly narrowed interpretation of "familial" into one of the few, if not only, cases to construe that aspect of *Heldreth* since its inception.

The West Virginia Constitution provides: "[I]t shall be the duty of the court to prepare a syllabus of the points adjudicated in each case in which an opinion is written and in which a majority of the justices thereof concurred, which shall be prefixed to the published report of the case." W. Va. Const. art. VIII, § 4. This Court has explained that "[t]his Court will use signed opinions when *new points of law are announced* and those points will be articulated through syllabus points as required by our state constitution." Syl. Pt. 2, *Walker v. Doe*, 210 W. Va. 490, 558 S.E.2d 290 (2001), *holding modified by State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014) (emphasis added). The Court explained that "if the Court addresses a novel legal issue or *otherwise intends to change the law*," it issues a new syllabus point. *Id*. at 497, 558 S.E.2d at 297 (Starcher, J., concurring in part and dissenting in part) (emphasis added). *See also State v. Lopez*, 197 W. Va. 556, 569, 476 S.E.2d 227, 240 (1996) (Workman, J., dissenting) (noting that new syllabus points reflect "major policy changes in the law"). It is the duty of this Court to articulate its holdings with thoughtful care and precision and not unnecessarily generate meaningless or inadvertent inconsistency in its decisions.

5

attention to the qualities of the actual relationships at issue in the context of the goals sought to be served by the legal standard at issue." *Dunphy v. Gregor*, 617 A.2d 1248, 1253 (N. J. Super. Ct. App. Div. 1992), *aff'd*, 136 N.J. 99, 642 A.2d 372 (1994). A "mechanistic formula in a definition" serves little equity. *Id*. at 1254. *See Hislop v. Salt River Project Agr. Imp. & Power Dist*., 5 P.3d 267, 275 (Az. Ct. App. 2000) (Garbarino, J., dissenting) ("While this rule will be predictable, it will permit some people to pursue this claim who have no close relationship, and yet prohibit others who have a loving, close relationship with someone injured or killed from pursuing these claims merely because they are not related by blood or marriage." (quoting *Grotts v. Zahner*, 989 P.2d 415, 417 (Nev. 1999) (Rose, C. J., dissenting))).

Instead of adhering to a simplistic rule that admittedly excludes meritorious claims, the majority should have permitted bystanders claiming a sufficiently close relationship to an injured party to develop their evidence and, if sufficient, present it to a jury for assessment. While certainly not every acquaintanceship or familiarity will give rise to an actionable claim and, without question, the circuit court is well-situated to serve as a gatekeeper for claims which are "spurious." *See* Syl. Pt. 2, *Ricottilli v. Summersville Mem'l Hosp.*, 188 W. Va. 674, 675, 425 S.E.2d 629, 630 (1992) ("An individual may recover for the negligent infliction of emotional distress absent accompanying physical injury *upon a showing of facts sufficient to guarantee that the emotional damages claim is not spurious*." (emphasis added)).

However, where the facts support an emotional bond equivalent to that which one would expect those of close familial relations, there is no justification for denying the opportunity to present the claim to a jury for determination. As the *Dunphy* court wisely noted: "Our courts have shown that the sound assessment of the quality of interpersonal relationships is not beyond a jury's ken and that courts are capable of dealing with the realities, not simply the legalities, of relationships to assure that resulting emotional injury is genuine and deserving of compensation. 642 A.2d at 378. Moreover, as Judge Garbarino observed,

> We ask juries to make all sorts of difficult determinations and deciding the closeness of a relationship is a judgment juries are uniquely qualified to make. Leaving this factual determination to the jury would [provide] . . . a reasonably flexible rule that does not arbitrarily bar those who would otherwise be able to establish a close relationship.

*Hislop*, 5 P.3d at 276 (Garbarino, J., dissenting) (quoting *Grotts*, 989 P.2d at 417-18 (Rose, C. J., dissenting). Just as the "credibility of the plaintiff's claim of emotional attachment should always be open to disproof, and not presumed to exist just because a particular degree of kinship exists," a claim of emotional attachment should not be presumed to be absent given the simple lack of marital or familial relation. *Dunphy,* 617 A.2d at 1254. Rather, such claims should be assessed on the merits of their individual facts. *Accord Dziokonski v. Babineau*, 380 N.E.2d 1295, 1302 (Mass. 1978) (holding that determination whether bystander liability exists based in part on "degree . . . of familial *or other* relationship between the claimant and the third person" (emphasis added)); *Leong v. Takasaki*, 520 P.2d 758, 766 (Haw. 1974) (holding that "plaintiff should be permitted to

7

prove the nature of his relationship to the victim and the extent of damages he has suffered because of this relationship"); *see also Smith v. Kings Entm't Co.*, 649 N.E.2d 1252, 1253 (Oh. Ct. App. 1994) (recognizing viability of bystander liability claim between friends but dismissing based on lack of close relationship).

Limitation of this cause of action to those who are of marital or familial relation is not only an idle dismissal of an important issue, but an attempt to force complex, modern relationships into unrealistic boxes: "What constitutes a 'familial relationship' is perforce a fact-sensitive analysis, driven by evolving social and moral forces. No one can reasonably question that the social and legal concept of 'family' has significantly evolved . . . ." *Moreland v. Parks*, 191 A.3d 729, 736-37 (N. J. Super. Ct. App. Div. 2018); *see Hislop*, 5 P.3d at 275-76 (Garbarino, J., dissenting) ("Anyone living in a non-traditional relationship will be denied the chance to recover emotional distress damages, while those living together with benefit of marriage will not suffer such prejudice.").

Permitting plaintiffs such as Mr. Blankenship to develop their evidence and, in the event of a sufficiently close relationship, presenting it to a jury creates no unreasonable burden upon defendants nor expands the scope of foreseeable injury beyond that which already exists. As the *Dunphy* Court observed:

> The identical acts of reasonable care that would have prevented the fatal accident that claimed the life of Michael Burwell would have preserved the emotional security of Eileen Dunphy. Certainly the extension of such a duty of care [to a

8

closely related bystander] . . . as a foreseeable and protectable person does not increase the burden of care or extend it beyond what is ordinarily expected and appropriate for reasonable drivers.

642 A.2d at 377.  Similarly, the duty of care owed by petitioners to avoid injuring Mr. Workman is the same measure of care which would have prevented the trauma suffered by Mr. Blankenship.  Simply permitting Mr. Blankenship to attempt to establish a close affinity and relationship with Mr. Workman does nothing to broaden the scope of petitioner's duty.  Further, as noted above, any concern about insubstantial claims was addressed nearly contemporaneously with *Heldreth* with the express requirement that a court evaluate such claims for spuriousness.[4]  *See* Syl. Pt. 2, *Ricottilli,* 188 W. Va. 674, 425 S.E.2d 629.  Rather than examining whether our existing law adequately serves the competing interests presented or addressing the underlying difficulty with the rule, the majority casually creates even sharper limitations on the cause of action.

There is little question that the relationship between "co-workers and friends can be enduring, substantial, and sealed by strong emotional bonds[.]"  *Hislop,* 5 P.3d at 273 (Garbarino, J., dissenting).  In this event, "[t]he law should find more than pity for one who is stricken by seeing that a loved one has been critically injured or killed."  *Dunphy*, 617 A.2d at 1255 (quoting *Portee v. Jaffee,* 417 A.2d 521, 526 (N. J. 1980)).  The majority herein blithely dismisses Mr. Blankenship's claim as one for bystander liability between

---

[4] *Heldreth* was issued on December 14, 1992.  *Ricottilli* was issued four days later on December 18, 1992.

9

mere co-workers and fails to address the inherent inequity in the *Heldreth* rule.  While Mr. Blankenship may well have been unable to develop evidence sufficient to demonstrate a non-spurious claim, it is simply premature to make that calculation in absence of anything more than his complaint.  Moreover, the majority's haphazard use of imprecise and confounding terms inconsistent with our existing law casts a startling new shadow over a long-settled concept.

Accordingly, I respectfully dissent.